Mary E. Antisdel, Appellant, *v.* Frank Williamson et al., Respondents, Impleaded with Another.

Guaranty of Payment of Bond and Mortgage — When Extension of Time of Payment Discharges Guarantors. While an extension of time for the payment of a mortgage debt, given to grantees of the mortgaged premises who were not personally liable therefor, discharges the mortgagor from his obligation only to the extent of the value of the land, the same rule is not applicable to the guarantors of the payment of a bond and mortgage in a case where the mortgage contained a covenant to pay the debt and is treated as a part of the security, the payment of which is guaranteed, and in which the terms and conditions of the mortgage must be held to be essential elements of the contract of guaranty equally with the terms and conditions of the bond; and where the mortgagee modified the mortgage so as to make it payable three years later, the extension constitutes such a material alteration of the contract of guaranty as will wholly discharge the guarantors from liability.

*Antisdel* v. *Williamson*, 37 App. Div. 167, affirmed.

(Argued December 5, 1900; decided January 22, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 27, 1899, which reversed a judgment in favor of plaintiff, entered upon a verdict and an order denying a motion for a new trial, and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*H. C. Sholes* for appellant. The defendants were not released from their liability under the guaranty by the extensions of payment. (*Murray* v. *Marshall*, 94 N. Y. 611; *Spencer* v. *Spencer*, 95 N. Y. 353; *Matter of Piza*, 5 App. Div. 181; *Kennedy* v. *Goss*, 38 N. Y. 330; 24 Am. & Eng. Ency. of Law, 833; Baylies on Sur. & Guar. 255; Brandt on Sur. & Guar. [2d ed.] § 350; Burge on Sur. 150.)

*William Nottingham* for respondents. Any material change in the terms of a contract will discharge the surety for its performance, without reference to the question whether

the alteration is to his detriment or advantage. (*Bangs* v. *Strong*, 7 Hill, 250; *Paine* v. *Jones*, 76 N. Y. 278; *Nat. M. B. Assn.* v. *Conkling*, 90 N. Y. 116; *Page* v. *Krekey*, 137 N. Y. 307; *Livingston* v. *Moore*, 15 App. Div. 15; *Halliday* v. *Hart*, 30 N. Y. 474.) Any·valid agreement made without his assent whereby the surety is deprived of, or delayed in, the exercise of his right of ·subrogation, and upon paying the debt to proceed immediately to its collection from the party or property, primarily liable, operates to discharge him. (*Jester* v. *Sterling*, 25 Hun, 344; *Bangs* v. *Strong*, 10 Paige, 11; *Grinnan* v. *Platt*, 31 Barb. 328; *Ducker* v. *Rapp*, 67 N. Y. 464; *Calvo* v. *Davies*, 73 N. Y. 211; *Phelps* v. *Borland*, 103 N. Y. 406; *Olmstead* v. *Latimer*, 9 App. Div. 163; *Remsen* v. *Beekman*, 25 N. Y. 552; *Kane* v. *Cortesy*, 100 N. Y. 132; *Fish* v. *Hayward*, 28 Hun, 456.) The bond and mortgage in question constituted a single contract embodying the terms of the maker's obligation and the conditions upon which the liability of the guarantors depended. The agreements of the holder, Sarah C. Parker, extending the time of payment, not only altered the contract guaranteed, but also prevented the sureties from exercising their rights attendant upon subrogation, and, therefore, upon both grounds the latter were released. (*Dougan* v. *E. & T. H. R. R. Co.*, 15 App. Div. 483; *Wadsworth* v. *Lyon*, 93 N. Y. 201; *Johnson* v. *Zink*, 51 N. Y. 333.) The contention that these extensions did not discharge the sureties, because the contracts therefor were not made personally with Cornelia Hall, the mortgagor, is not sustained by principle or authority. (*Grinnan* v. *Platt*, 31 Barb. 328; *Jester* v. *Sterling*, 25 Hun, 344; *Burt* v. *Saxton*, 1 Hun, 551; *Loomis* v. *Donovan*, 17 Ind. 198; *Ducker* v. *Rapp*, 67 N. Y. 464; *Halliday* v. *Hart*, 30 N. Y. 474.)

CULLEN, J.   On February 20, 1889, Cornelia Hall executed and delivered to George L. Parker her bond, conditioned for the payment of four thousand dollars on February 28, 1892, with interest payable semi-annually, and as security therefor a

mortgage of certain lands in the county of Orange. George L. Parker, on July 19, 1889, assigned the said bond and mortgage to Sarah C. Parker. On such assignment the defendants, by a separate instrument under seal, guaranteed to Sarah C. Parker the payment of said bond and mortgage. In April, 1890, default having been made in the payment of the previous half year's interest, Sarah C. Parker instituted an action to foreclose the mortgage, declaring her election that the principal should become due according to a stipulation to that effect contained in the mortgage. At this time one Penoyer had become the owner of the equity of redemption, but had not personally assumed the payment of the mortgage debt. Evidence was given on the trial to the effect that after the commencement of the foreclosure suit an agreement was made between Penoyer and Mrs. Parker, whereby, in consideration of the payment of the interest and costs and the delivery of further security for the payment of the debt, the default in interest was waived and the mortgage reinstated in accordance with its original terms. When the mortgage became due in 1892 Angelina R. Ketchum was the owner of the mortgaged premises, but was not personally liable for the mortgage debt. Evidence was given on the trial showing that at this time, in consideration of the execution and delivery of the personal bond of Angelina Ketchum, Mrs. Parker agreed to extend the mortgage for a further term of three years. In 1896 the mortgaged property was sold under the foreclosure of a prior mortgage and brought only sufficient to pay that mortgage and the expenses of foreclosure. Thereafter, the plaintiff, who had become the owner of the bond, mortgage and guaranty, brought this action to recover the amount due on the mortgage. The defendants answered, setting up among other defenses the two extensions of time already recited, by which it was claimed they were discharged from liability. The plaintiff had a verdict at Trial Term. The defendants' motion for a new trial was denied and judgment entered on the verdict. On appeal the judgment and order denying a new trial were reversed and a new trial ordered. The order

entered by the learned Appellate Division is somewhat pecu-
liar, as it affirmed the findings of the jury on some of the
issues in the case and reversed them on others. It is not nec-
essary to give the details of this order ; it is sufficient to say
that concededly the appeal before us is in such shape that if it
should be held that the extensions referred to wholly dis-
charged the defendants from liability, the order of the Appel-
late Division must be affirmed.

The contention of the appellant is that as neither Penoyer
nor Ketchum was personally liable for the mortgage debt, the
extensions granted those persons did not discharge the original
debtor, Cornelia Hall, entirely from her obligation, but only
to the extent of the value of the mortgaged lands (of which no
proof was given on the trial), and that the defendants were
relieved from liability on their guaranty to no greater extent
than their principal was discharged. The first proposition,
that the bondsman was discharged only to the extent of the
value of the land, is undoubtedly the law of this state. (*Mur-
ray* v. *Marshall*, 94 N. Y. 611.) But the second proposition,
that the extent to which the bondsman is discharged measures
the extent of the discharge of the guarantors, does not follow.
The ground on which the decision in *Murray* v. *Marshall*
proceeded is, that where property is conveyed subject to a
mortgage, the payment of which is not assumed by the grantee,
the mortgagor becomes a surety for the debt only to the extent
of the value of the land, and beyond that amount remains the
principal debtor. The situation of the defendants is radically
different; they at all times have borne the relation of mere
sureties. It is settled law that the obligation of a surety " is
*strictissimi juris* and he is discharged by any alteration of
the contract, to which his guaranty applied, whether material or
not, and the courts will not inquire whether it is or is not to
his injury." (*Page* v. *Krekey*, 137 N. Y. 307 ; *Paine* v. *Jones*,
76 N. Y. 278 ; Brandt on Suretyship, § 378.) At the same
time, it is also the rule that where the creditor has security
for a debt which he relinquishes or as to which he miscon-
ducts himself, the surety is not wholly discharged, but only to

the extent to which he is injured, that is to say, the value of the security. This last rule, however, is not of universal application. In Brandt on Suretyship (§ 429) it is said: " When by the act of the creditor the surety has been deprived of the benefit of a fund for the payment of the debt, and the contract by which the surety is bound is not changed, he is only discharged to the extent that he is injured, as in such case it is the fact that he is injured which entitles him to the discharge. But where the creditor relinquishes a security for the debt, and thereby materially alters the contract, the surety is wholly discharged, whether he is injured or bene-fited, because in such case it is no longer his contract." In *Watts* v. *Shuttleworth* (7 Hurlstone & Norman, 353) a contract was made to furnish and complete certain fittings for a warehouse, to be paid for in installments. The contract provided that the owner should insure the fittings from injury by fire in an amount to be determined by the architects. The defendant guaranteed the performance of the contract. The plaintiff (the owner) took out no insurance and the fittings were destroyed by fire. To replace them, the contractor hav-ing failed, the plaintiff was compelled to spend a sum in excess of the contract price. It was held that plaintiff's failure to insure discharged the guarantor in toto and not merely to the amount for which he should have insured. In *Polak* v. *Everett* (L. R. [1 Q. B. Div.] 669) the defendant guaranteed the performance of an agreement by which his principal undertook to repurchase of the plaintiffs certain shares of stock and pay therefor the sum of £6,000. The agreement provided that book debts belonging to the principal should be transferred to the plaintiffs, and one-half of the amounts collected thereon should be applied on account of the purchase money of the stock. An agreement was subsequently made between the plaintiffs and defendant's principal whereby the former released the book debts. One-half of these book debts, had they been collected in full, would not have amounted to the plaintiffs' claim. It was held that this subsequent agreement between the plaintiffs and defendant's principal was a material altera-

tion of the contract, the performance of which the defendant had guaranteed ; that the rule as to a creditor's release of security did not apply, but that the defendant was entirely discharged, regardless of the extent of his injury.   In the case before us the defendants guaranteed the payment, not of a bond alone, but of a " certain bond and mortgage."   The mortgage, which contained a covenant to pay the debt, is treated as a part of the security, the payment of which is guaranteed, and the terms and conditions of the mortgage must be held essential elements of the defendants' contract of guaranty equally with the terms and conditions of the bond.   The mortgage so guaranteed was by its terms payable in February, 1892.   By the act of the mortgagee this mortgage was modified so as to become payable in February, 1895.   The defendants never assumed responsibility for such a security and the agreement by which the terms of the original mortgage were so modified was a material alteration of the defendants' contract which discharged them from liability.

This case differs in principle from that of *Vose* v. *Florida Railroad Co.* (50 N. Y. 369).   In that case the defendant Yulee indorsed certain notes of Finnegan & Company given to the plaintiff as security for the payment of rails sold by them to Finnegan & Co.   As further security Finnegan & Co. had deposited certain railroad bonds with the plaintiff. By a written agreement between these last-named parties the plaintiffs were authorized on default in the payment of the notes to sell the bonds at auction, except those held as collateral for the notes indorsed by Yulee, as to which it was provided that thirty days' notice of the sale should be given to J. T. Souter of New York.   The bonds were sold by the plaintiffs without giving the prescribed notice.   It was held that the indorser Yulee was not discharged entirely, but only to the extent of the value of the bonds sold.   In that case, however, Yulee was not a party to the agreement under which the bonds were pledged.   His contract was solely that of indorser on the notes.   Therefore, the sale of the bonds without notice in no respect altered the surety's contract, and he

48

was entitled only to the benefit of the rule relating to a creditor's release of securities already stated. This distinction is stated with great clearness in the brief of the successful counsel in the case cited : " The provisions as to notice are no part of the contract with the indorser of the notes and have no direct connection therewith. Whatever rights the indorser has to the securities, are not legal rights founded upon contract *quo ad him,* but mere equitable rights, to have by subrogation or otherwise, the substantial benefit of such securities proceeding from the principal debtor." In the present case the time for which the mortgage was to run was an essential condition of the contract which the defendants guaranteed.

The order appealed from should be affirmed and judgment absolute directed for defendants on the stipulation, with costs.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and WERNER, JJ., concur.

Order affirmed.