WING & BOSTWICK CO. v. UNITED STATES FIDELITY & GUAR-
ANTY CO.

(Circuit Court, W. D. New York.   November 8, 1906.)

No. 92.

1. CONTRACTS—BUILDING CONTRACTS—NONPERFORMANCE—EVIDENCE.

In an action on a subcontractor's bond for an alleged nonperformance of a building contract, evidence *held* to require a finding that the negligent construction of the rear wall of the building and the inexcusable delay in completing the building by the principal in the bond was the indirect cause of the building's collapse.

2. GUARANTY—BUILDING CONTRACTOR'S BOND—SPECIAL CONTRACT.

Where a building contractor's bond contained no words of limitation indicating that the surety depended on the faithfulness of the obligee or reposed any trust in him, but expressly recited that the principal and the obligee had entered into a written contract by which the former agreed to construct the building in question for plaintiff, the bond did not import a special guaranty.

3. SAME—ASSIGNMENT.

Where a bond given by a sub building contractor to the contractor imported a general guaranty to indemnify the obligee from loss sustained under the contract, it was immaterial that the obligee assigned the same to enable the owner to recover damages for the subcontractor's breach of his contract.

4. PRINCIPAL AND SURETY—BUILDING CONTRACT—EXTENSION OF TIME—NOVATION—DISCHARGE OF SURETY.

A continuance of the work on a building beyond the time specified in the contract does not constitute such a novation of the contract as would discharge the contractor's surety from liability.

5. SAME—NEW CONTRACT.

Where a subcontractor's surety had received notice of the termination of the contract both from the architects and from the contractor, who was liable under his contract to the owner to complete the work the subcontractor was about to abandon, the fact that a new contract was made between the contractor and the subcontractor without notice to the surety, which did not constitute a departure from the conditions of the original contract, did not release the surety from liability.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Surety, §§ 162–177.]

6. ASSIGNMENTS—SUBCONTRACTOR'S BOND—EFFECT.

Where, notwithstanding an assignment of a subcontractor's bond to the owner, the contractor commenced an action in another jurisdiction to recover damages sustained by him, the assignment to the owner, though absolute on its face, should be regarded merely as collateral.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments, §§ 135, 136.]

7. DAMAGES—CONTRACTS—BUILDING CONTRACTS—DELAY—RENTAL VALUE.

Where a building contract did not specify any penalty for nonperformance within the time prescribed, and time was not of the essence of the contract, but there was no extension of time or waiver, the owner's damages for nonperformance within the time were the rental value of the premises.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 312, 313.]

Sebring, Cheney & Rogers, for plaintiff.
Herendeen & Mandeville, for defendant.

HAZEL, District Judge. This is an action to recover upon an indemnity bond executed by the National Concrete Steel Company, as principal, and the defendant, the United States Fidelity & Guaranty Company, as surety (hereinafter referred to as the steel company and the surety, respectively), to one D. J. Calkins. The surety bound itself to indemnify the obligee for damages resulting from a breach of a contract for the erection of a three-story reinforced concrete building upon the lands of the plaintiff, the Wing & Bostwick Company, at Corning, N. Y. Contemporaneously with a contract between Calkins and the plaintiff for the erection of said building, the former entered into a subcontract with the steel company for its construction; the contract price being $12,000, which amount was $1,000 less than the amount named in the first-mentioned contract. The bond upon which this action is brought was delivered to the plaintiff with an assignment from Calkins, the original contractor, indorsed thereon.

On July 20, 1903, after the construction of the building had been commenced by the steel company, another assignment of the surety bond, which in terms was absolute on its face, was delivered by the obligee to the plaintiff. The work was commenced in the month of May, 1903. Thereafter, on July 16th, the architect of the work, acting under the contract, certified that on account of the failure or omission of the steel company to prosecute the work with promptitude there was a default in the contract which justified its termination by the owner. On July 18th the architect, acting for the original contractor and the owner, took possession of the building, but, pursuant to a subsequent written arrangement between the original contractor and the steel company, in which the plaintiff acquiesced, the steel company continued the contract and the performance of the work until on or about October 1, 1903, when it finally abandoned the same. The original contractor then engaged the International Fence & Fireproofing Company to complete the unfinished building. Upon completion of the roof the false work which supported the weight of the concrete was removed, and fires were started to dry the concrete material.

On the night of December 15th, however, the building suddenly collapsed; the roof and rear wall falling down. The plaintiff claims that such collapse was directly due to the failure of the steel company to put in place in the rear wall of the building two pilasters and two beams which were specified in the exhibit drawings and plans, and its omission to properly reinforce the concrete material; while the defendant contends that the principal cause of the collapse was the negligence of the superintendent of the fireproofing company in constructing the roof in freezing weather, and then removing the supports and thawing out the frost in the concrete, thereby producing a plastic condition of the same. The facts bearing upon the direct cause of the breakdown are conflicting. Without deeming it necessary to discuss the different technical theories assigned therefor by the expert witnesses, it may be stated that in my judgment primarily the roof caved in owing to the frost in the concrete which prevented it from setting, and that the falling down of the roof caused the rear portion of the concrete building

to precipitate, which probably would not have occurred if the pilasters and beams, together with the proper reinforcement in that portion of the building, had been supplied as specified in the plans and specifications. It may be fairly presumed, from the absence of the pilasters and beams, together with the reinforcing means, and the delay in the performance of the work, that the steel company was primarily to blame for the mishap. The rear wall would have materially resisted the strain of the roof if the supporting means mentioned had not been omitted.

In view of the circumstances, the work of completing the building proceeded as rapidly as the situation permitted; the concrete roof being built between November 25th and December 1st. Johnson, at that time superintendent of the work, was a competent and experienced builder. The precaution and care exercised by him to protect the concrete material from the frost cannot safely be challenged. Although the construction of the roof was commenced in cold weather, the temperature being from 20 to 36 degrees, the cement when applied was in a plastic condition for setting, and, the building of the roof having been started, a rapid completion of the same was necessarily required. That the weather became conspicuously colder as the work progressed, and the probability that the concrete froze after being applied to the roof, cannot be persuasively considered to establish negligence in the construction of the roof, in view of the showing by plaintiff that ordinary diligence and care was used to cause the concrete to set. It being my conclusion that the negligent construction of the rear wall and the inexcusable delay in completing the building by the steel company was the indirect cause of the collapse of the building, the other propositions presented on argument may be considered.

Defendant contends that the bond in question was a special guaranty, and therefore not assignable before a cause of action upon it had arisen. In support of this contention the point is made that, under plaintiff's pleadings and bill of particulars, the breach of the contract is not asserted until October 1, 1903, which was after the assignment of the bond and the time when the work was actually abandoned. The bill of particulars is sufficiently specific to indicate a breach prior to the last assignment. The contract emphatically declares that the work was to be performed under the direction of the architects, whose decision as to the proper construction of the drawings and specifications was to be final. The contractor bound himself to provide skilled workmen and supply proper materials to diligently prosecute the work. For failure to do these things the owner, on certification by the architects, was at liberty after three days' notice to the contractor to employ others to complete the work. It appears that the architect, acting for the original contractor, on July 16, 1903, certified the default of the subcontractor, and afterwards the original contractor assumed the performance of the work. Whether the contract was actually broken at the time the architects made the certificate above referred to, or later when the steel company abandoned the work, is unimportant, as the unrestricted language of the bond does not import a special guaranty. No words of limitation are found in the instrument to indicate

that the surety depended upon the faithfulness of the obligee or reposed any special trust in him. Indeed, the bond expressly states that the principal and the obligee have entered into a written contract by which the former agreed to construct the building in question for the plaintiff. If it had been the intention of the parties to create a special guaranty, words importing such an intention should have been incorporated in the bond.

Stress is laid upon the proposition that the indemnity bond, being special in its character, would run only to the building contractor, and not to his assignees; the defendant not having consented to an assignment. The case of Levy v. Cohen, 45 Misc. Rep. 95, 91 N. Y. Supp. 594, particularly cited in support of this proposition, was not sustained on appeal; the appellate court (Levy v. Cohen, 103 App. Div. 195; 92 N. Y. Supp. 1074) decisively holding that, as the bond was not given because of any trust or confidence reposed in the contractor, there was no special guaranty. True, in that case the defendant consented to the assignment, but the court evidently did not regard such consent as of prime importance. I conceive the law to be that a bond such as here considered, given expressly to indemnify the obligee from loss sustained under a building contract, is general in its character, and it is immaterial whether the obligee assigns the same to enable another to recover damages sustained. In this respect there is a wide departure from the rule of law governing a surety of a bill of exchange, a bill of lading, or a personal guaranty which has effect only in relation to a particular person or object, as, for instance, risks on fire insurance where perhaps the character of the owner as a man of integrity is an element of the contract.

The next contention is that such changes were made in the contract as would release the surety from its obligation. The weight of the evidence does not show alterations in the contract which will relieve the steel company from responsibility or the surety from liability. According to the defendant, the original contractor employed or persuaded the defendant to employ as superintendent one Austin, and it is urged that, as the contract provided that the building should be erected under the supervision of the steel company, the employment of Austin by Calkins was a departure from the contract. The evidence, however, does not warrant such a finding of fact. The defendant introduced evidence to show that Calkins had instructed Austin to omit the pilasters or half columns in the rear of the building. Both Calkins and Austin deny this assertion, and I am unpersuaded by the testimony of the defendant on this point. Indeed, Thompson, another superintendent, was in charge of the work when the half columns should have been put in position. The contract prohibited any changes in the building without the consent of the architects. If it were satisfactorily shown that the pilasters were omitted, or the contract modified in a substantial particular at the request of the original contractor, who may be presumed to have been acting for the owner, and as a result of which the building collapsed, a different question would be presented.

The claim that the time of performance was extended beyond August 1st, without notice to the defendant, is not sustained. A continuance of the work beyond the time specified in the contract is not thought

to constitute a novation of the contract discharging the surety from liability. Standing alone it was not a substantial departure from the intention of the parties as fairly expressed in the writing. No changes in the contract were made in relation to the erection of the building, its cost, or the materials to be used. That a contract of surety is strictissimi juris specifically obligating the guarantor to the terms of his contract is undeniable. Livingston v. Moore, 15 App. Div. 15, 44 N. Y. Supp. 145; Antisdel v. Williamson, 165 N. Y. 373, 59 N. E. 207; Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; National Mech. B'k'g Ass'n v. Conkling, 90 N. Y. 116, 43 Am. Rep. 146. And some of the adjudications even hold that it is not a question of whether the alteration in the contract was material or not; the important consideration being whether the change was substantial. In this case no such modification is shown as would justify the conclusion that there was a change "in the letter and spirit of the contract." There was simply a continuance of the work agreed to be performed beyond the time specified in the contract for its completion, or rather an attempt to fulfill the obligations of the contract and relieve the surety from liability.

It is further objected that another contract was made between Calkins and the steel company without notice to the surety. The effect of the arrangement was not a departure from the conditions of the original contract, but apparently was an endeavor by Calkins, who was liable under his contract with the owner to persuade the steel company to complete work which it had undertaken and which it evidently was anxious to abandon. Moreover, the surety had previously received written notice of the termination of the contract from the architects, and Calkins to protect himself was justified, in my opinion, in taking possession for the purpose of performance. Hence I conclude that there was no abrogation of the contract or a substantial alteration of the same.

The next point is whether the assignment of the surety bond was merely collateral, or whether, on account of its being absolute on its face, the plaintiff is entitled to recover also the amount that Calkins has paid (who it is claimed has paid more than $6,000 to complete the contract). Even if the assignment contained language indicating an absolute assignment to the plaintiff, it is nevertheless the duty of the court to ascertain the conditions under which the assignment was made. The testimony of Mr. Kyle, witness for the defendant, and the concession that another action to recover on the bond brought by Calkins in another jurisdiction is now pending, clearly proves that the parties intended the assignment merely as security for any damages which plaintiff might suffer by reason of any breach of the contract. Therefore, this being an action at law, and the obligee not being a party thereto, the stipulation and testimony in relation to plaintiff's damages alone will be considered.

It is well settled that ordinarily, when there had been a delay in the completion of a building or performance of the work, the rental value of the premises is the true measure of damages. The contract in suit does not specify any penalty, and strictly speaking, time of performance was not of the essence of the contract. Nevertheless, when the con-

struction of a building has been delayed, there being no extension of the time or waiver, the damages are the loss of the rent. Philips & Colby Construction Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Small v. Burke, 92 App. Div. 343, 86 N. Y. Supp. 1066; Oberlies v. Bullinger, 75 Hun, 248, 27 N. Y. Supp. 19; Beck & Pauli Lithographing Co. v. Colorado Milling & Elevator Co. 52 Fed. 700, 3 C. C. A. 248. Evidence was given tending to show that the rental loss of the plaintiff, by reason of its inability for a period of 10 months to occupy the premises, amounted to $2,300 or $250 for each month's delay. I think, however, that a rental amounting to 10 per cent. of the cost of the premises is more nearly the correct value of the building in question. Some evidence is found in the record from which it may be presumed that the premises were valued at about $20,000 to $22,000, and, accordingly, I allow as damages the sum of $200 per month from August 1st, the time when the building should have been completed, to April 20th, when I think it was possible for the plaintiff to move into the building; the total amount of such loss being $1,733.33.

The plaintiff is also concededly entitled to recover the following items: $84.97, $111.75, $254.36, total $451.08, over and above the amount of $12,993.66, the contract price between plaintiff and the original contractor; but, as plaintiff has paid on the contract the sum of $12,400 only, there must be a deduction of $593.66 from the total of $2,184.41, as allowed hereinabove, which leaves a balance due the plaintiff of $1,599.75. The claim of $350 for imperfect construction of the floors is disallowed. Findings of fact may be submitted.

The plaintiff may enter judgment, with costs, in accordance with the foregoing views.