(147 App. Div. 871.)

## KNICKERBOCKER TRUST CO. v. CONDON.

(Supreme Court, Appellate Division, First Department.   December 29, 1911.)

1. GUARANTY (§ 62*)—DISCHARGE OF GUARANTOR—LOSS OF OTHER SECURITY.

In absence of express agreement by the pledgee of corporate bonds pledged to secure notes guaranteed by defendant to take steps to protect the bonds while the note was unpaid, the pledgee was only bound to hold the bonds so that they could be resorted to without any change in their terms, and was not bound to begin an action for default in payment of interest, or take any other steps to prevent the corporate property from depreciating, at least until the notes matured, so that failure to do so, resulting in depreciation of the value of the bonds, would not discharge defendant as guarantor.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 72;  Dec. Dig. § 62.*]

2. GUARANTY (§ 62*)—DISCHARGE OF GUARANTOR—SURRENDER OF SECURITY.

Where it was not shown that corporate bonds were delivered to plaintiff to hold to secure a note executed to him by the corporation, pursuant to the contract by which defendant guaranteed the notes, or that plaintiff agree to hold the notes, the surrender of the bonds by plaintiff as pledgee before payment of the notes would not discharge defendant as guarantor, but would only be a defense to defendant, when sued as guarantor, to the extent of the value of the bonds surrendered.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §·72;  Dec. Dig. § 62.*]

3. GUARANTY (§ 78*)—ACTIONS—DEFENSES.

The action was on defendant's guaranty of promissory notes executed by a corporation, and the answer alleged that on September 1, 1902, plaintiff made a contract with the corporation by which it agreed to become trustee of the company's property under a trust deed, which was given as collateral for a bond issue; that the mortgaged property consisted of certain machinery and a lease; that to prevent forfeiture of the lease defendant, who also held a number of the bonds, procured a subtenant, and also negotiated a sale of the mortgaged property to such subtenant, and requested plaintiff to foreclose the mortgage, which plaintiff did, and had a receiver appointed; that defendant guaranteed the notes "believing" that plaintiff as trustee would carefully protect all rights in the mortgaged property as was its duty under the trust deed, which gave it the exclusive right of action thereunder until its refusal to act; that plaintiff failed to have rent "due the bondholders" from the subtenant, who was solvent, collected, and negligently refused to take steps to compel the receiver to collect any of the rents or debts "due the bondholders," thereby depreciating the value of defendant's bonds. *Held*, that the facts alleged, as to plaintiff's breach of his duties under the trust deed, would not constitute a defense to the action, even if defendant was the only bondholder, since they arose out of a separate contract from that sued upon.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 91, 92;  Dec. Dig. § 78.*]

4. GUARANTY (§ 78*)—DUTIES OF TRUSTEE—BREACH—RIGHT OF ACTION—INDIVIDUAL BONDHOLDER.

The answer did not allege that plaintiff's obligations under the trust deed were to each bondholder severally, but only to the mortgagor or the bondholders jointly, or both, so that defendant, an individual bondholder, could not set up damages arising from plaintiff's breach of its duties

under the trust deed as a counterclaim in the action against defendant as guarantor.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 91, 92; Dec. Dig. § 78.*]

**5. PLEADING (§ 142*)—COUNTERCLAIM—DESIGNATION OF NATURE.**

A counterclaim need not be designated as such in the pleading, if it alleges the essential facts.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 290, 291, 297, 300; Dec. Dig. § 142.*]

**6. GUARANTY (§ 66*)—DISCHARGE OF GUARANTOR.**

If a guarantor's agreement to indemnify plaintiff, the trustee under a trust deed, to the extent of a certain sum for disbursements in foreclosing, did not form part of a guaranty subsequently executed, by which the guarantor guaranteed a corporate note executed to plaintiff, the trustee's breach of the agreement as to foreclosure, by permitting the costs of the foreclosure to exceed the stipulated sum, would not discharge defendant as guarantor on the notes.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §.76; Dec. Dig. § 66.*]

Appeal from Special Term, New York County.

Action by the Knickerbocker Trust Company against Thomas G. Condon. From an order granting plaintiff's motion for judgment on the pleadings, and from the judgment entered thereon, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

Edward J. Shumway, for appellant.
Hedley V. Cooke, for respondent.

LAUGHLIN, J. The plaintiff alleges that on September 7, 1909, the sum of $8,000, with interest at 6 per cent. from the date of the loan, which is not given, was due and owing to it by the Fireproofine Manufacturing Company, a *domestic corporation,* for moneys theretofore loaned; that on said day it agreed to extend the time of payment of the principal one month at the request of said company and of the defendant, and the original debtor gave its note for $8,000, payable on October 7, 1909, and the defendant guaranteed in writing the payment of the note; that part of the principal but no interest has been paid; and that a balance of $6,600 principal and interest on the amounts from time to time unpaid is due and unpaid, for which it demands judgment. The defendant served an answer, and on the plaintiff's motion it was declared insufficient, and leave was granted to amend. He then served an amended answer admitting the allegations of the complaint and setting up matter in three counts, as follows: The first as a separate and distinct defense, the second as a separate and distinct defense and by way of set-off, and the third as a separate, distinct, and partial defense and by way of set-off. The plaintiff then moved for judgment on the pleadings. The motion was granted, and defendant appeals.

In the first separate and distinct defense, the defendant alleges: That on or about September 1, 1902, the plaintiff, for a valuable con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sideration, entered into an agreement, which it was authorized to make, with the Fireproofine Manufacturing Company, a *West Virginia* corporation, which agreement was to continue until 1922, wherein and whereby it promised, covenanted, and agreed with said company to become mortgagee or trustee under a certain mortgage or deed of trust of all the property of said company, which mortgage was given as security and collateral for an issue of 100 bonds of said company of the par value of $1,000 each, and to act as mortgagee or trustee of said property for the security, benefit, and protection of the bondholders, and entered upon the discharge of its duties as such mortgagee or trustee. That, when the defendant executed the guaranty on which the action is based, 87 of said bonds had been duly issued and were outstanding, and 12 of them were delivered to plaintiff—it is not alleged by whom—"as surety for the payment of said note," with authority to sell the same on default by the company in paying the note. That the mortgaged property "consisted of certain machinery processes of fireproofine, lease of certain premises" on 152d street in the city of New York, owned by the William Astor estate, to run for 20 years, and the buildings thereon and certain fixtures, tools, implements, and equipment thereon, of the value of $42,000, and of the rental value of $1,000 per month. That in June, 1909, the company became insolvent and unable to pay its debts or the ground rent of said premises, for which it was in arrears and subject to eviction. That said movable fixtures were of the value of $16,000. That in March, 1909, the defendant owned 44 of said bonds, and, with a view to preventing a forfeiture of said lease, he procured as a subtenant for said premises the American Mahogany Company, who entered with the consent and knowledge of the Fireproofine Manufacturing Company and said William Astor estate, and who paid rent to the company for the use and occupancy of said premises until about the 1st of July, 1909. That at this time, the company being insolvent and in default for six months in payment of semiannual interest due on the bonds, the defendant had a right to enter and take possession of the mortgaged property and to foreclose the lien of the mortgage. That to avoid waste, loss, and depreciation of the mortgaged property, and to prevent the forfeiture of the lease, the defendant, with the knowledge and consent of the William Astor estate, and in behalf of the bondholders and the company, negotiated for a sale of the mortgaged property to said American Mahogany Company, which had offered therefor the sum of about $36,000, and in order to give it good title, free and clear of incumbrances, he requested the plaintiff to foreclose the mortgage and "to take such other steps as were necessary to protect and secure the rights, property, and interests" of the bondholders, "and sell and dispose" of the property, and informed the plaintiff of said facts and requested that it take action immediately. That the plaintiff commenced an action to foreclose, and on September 3, 1909, had a receiver appointed by the Supreme Court therein, who thereupon promptly entered upon and took possession of the mortgaged property and premises. That defendant had agreed to indemnify plaintiff in the sum of $1,500 for the expenses of the foreclosure, which plaintiff

agreed should not exceed said sum. That defendant guaranteed payment of the note, "believing" that plaintiff as mortgagee and trustee would "duly and carefully protect the rights and interests of said mortgaged property" by taking, whenever necessary, "all actions and proceedings requisite to safeguard and protect the rights and property of said bondholders," as it was authorized and was its duty under said mortgage, which gave it the exclusive right of action thereunder "until its refusal to act and to decline to accept the duties of trustee for the said bondholders." That, when the receiver was appointed, the American Mahogany Company owed two months' rental for the use and occupation of the premises, which was of the reasonable value of $2,000, which by the terms and conditions of the mortgage had been assigned to the bondholders. *That plaintiff failed to cause to be collected* and paid to the receiver the rentals due and those which accrued for use and occupation by said company from that time until March 1, 1910, during which time the receiver was in charge, and said company used and occupied the property. That the monthly rental due the Astor estate was about $700, and "said rental had been unpaid and in arrears." That at defendant's request the Astor estate had given an extension of time for payment of the rentals in arrears, and plaintiff was so informed "at and prior to the commencement of said foreclosure" action, and notified that the property would be wasted, forfeited, and lost by any delay on its part. That the plaintiff "willfully and grossly neglected and refused to take the necessary steps and procedure to collect the outstanding rents, issues, profits, and debts due the bondholders under the aforesaid deed of trust; refused to have the ground rents of said premises paid; willfully and negligently refused to take any steps to compel the receiver to collect any of said rents, issues, profits, or debts due the said bondholders, or to pay the ground rent of said mortgaged premises, but did delay said proceedings for the sale of said premises until or about the 23d day of February, 1910. That at which said time said mortgaged property was sold to the said Astor estate for the sum of or about $5,000 and certain releases to the said Fireproofine Manufacturing Company for debts due it, and which sum was subject to charges, fees, and expenses of or about $4,000, in breach of and in contravention to the said agreement with defendant that all charges thereto should not exceed $1,500." That said American Mahogany Company was solvent and able to pay said rentals, and that, "solely owing" to plaintiff's failure to collect the rentals and to pay the rentals due to the Astor estate, the lease, with the buildings and fixtures, together worth $26,000, were forfeited by it for one dollar "by and with the consent of said plaintiff, and also of a release to said Fireproofine Manufacturing Company of or about $16,000 for back and unpaid rentals, as and in part payment, using the bondholders' property to pay the debts of the Fireproofine Manufacturing Company, and said plaintiff did, on information and belief, release and permit the discharge of the said receiver from any and all claims against him by the said plaintiff as trustee for said bondholders and from all and any claims due him from the said American Mahogany Company for rentals." That "on

information and belief said plaintiff failed and neglected, owing to its neglect to collect the sums due as rentals, to compel said receiver to sell, or offer for sale, separate and apart from said buildings and lease, the machinery, fixtures, and other personal and portable property not forfeited to said Astor estate, and to remove said machinery from said buildings and place them in marketable condition." That said 12 bonds were of or about the value of $7,000, and by reason of the premises they reduced or depreciated to $125, the amount realized and received as the pro rata share of said bonds on said foreclosure sale, after deducting expenses, and now in the hands of plaintiff and applicable in payment, in part, of said note, to defendant's damage "in the sum of about $6,875."

The second separate and distinct defense and set-off re-alleges all but two paragraphs of the first defense, which contained the allegations to the effect that defendant indorsed the note "believing" that plaintiff would "duly and carefully protect the rights and interests of said mortgaged property," and that the value of the bonds so deposited as collateral security was depreciated, as alleged, by the neglect of the plaintiff; and further alleges that the said mortgaged property, which was worth $42,000, was assigned to plaintiff as security for said bonds, of which defendant owns 44, and that owing to the willful neglect of plaintiff, as stated, it is now worth only $1,000, to defendant's damage in the sum of $22,000, and that, with the exception of plaintiff, the defendant is the only bondholder within the jurisdiction of the court.

The third separate, distinct, and partial defense and set-off merely re-alleges by reference all the allegations of the second separate and distinct defense and set-off. The defendant demands a dismissal of the complaint and judgment on the set-offs for an amount equal to any sum proved against him by plaintiff.

[1] The facts pleaded for a first separate and distinct defense do not constitute a defense to the action. It thereby appears that the West Virginia corporation was insolvent and had made default in the payment of the interest on the bonds, and that a foreclosure of the mortgage had been commenced by the plaintiff, as trustee, for the benefit of the bondholders, and a receiver had been appointed in that action, before the note, upon which this action is based, was indorsed or guaranteed by the defendant. It is fairly to be inferred that the appellant fully understood the status of the foreclosure action and the mortgaged property at the time he indorsed the note, for he alleges that he had procured a subtenant of the premises and had induced the respondent to institute the foreclosure action, and other facts showing full knowledge of the entire situation.

The appellant contends that the respondent, without his consent, has effected a change in the contract which he indorsed or guaranteed which discharges him. His theory appears to be that he indorsed or guaranteed a *secured* note, and that, by reason of the negligence of the respondent in the respects herein pointed out in the statement of facts, the security has become materially reduced in value. The facts upon which the appellant claims that it was the duty of the respond-

ent, *merely as pledgee* of the bonds, to do the things with respect to protecting the security, the failure to do which caused the damages and upon which he claims that it was the duty of the respondent *under the mortgage trust agreement* to protect the bonds for his benefit and for the benefit of the other bondholders, are so intermingled in the pleading that they tend to confusion and render it somewhat difficult to grasp their bearing on the legal points presented. Considering first the duty of the respondent merely as pledgee of the bonds to the surety, we find no allegation that there was any express agreement by which the respondent obligated itself to take any steps to protect the bonds during the month the note which the appellant indorsed or guaranteed was to run. It is not alleged that the respondent obligated itself, as a condition of the indorsement or guaranty by the appellant, to perform any duty under the mortgage trust agreement; nor is it even alleged that the delivery of the bonds as collateral security formed any part of the agreement by which the appellant became the indorser or guarantor of the note. The bald allegation that, when the appellant indorsed or guaranteed the note, he *believed* that respondent would perform its duty to the bondholders, is of no avail.

The appellant contends in effect that the acts of negligence on the part of the respondent, by which the value of the bonds was diminished, were tantamount to a surrender of the security. We do not agree with this contention, and are of opinion that, as pledgee, on the facts alleged, the respondent performed its duty, which was merely to hold the bonds so that when the note became due they could be resorted to; unchanged in their terms and unaffected by any act of the respondent, for the payment thereof either by the respondent or by the appellant, on his paying the note and becoming subrogated to the rights of the respondent. As mere pledgee of the bonds, the respondent was under no obligation to institute an action for a default in the payment of interest thereunder, or to otherwise move, until the note became due, at least in the absence of any demand on the part of the surety therefor, which is not shown. The only demand on the part of appellant for action by the respondent was before he became surety and with respect to the respondent's rights and duties under the mortgage trust agreement.

[2] Moreover, on the facts alleged, if the respondent had surrendered the bonds, that would not discharge the appellant, but would merely constitute a defense to the extent of the value of the securities surrendered. As already stated, the appellant does not show that the bonds were delivered to the respondent pursuant to the contract by which the appellant became the indorser or guarantor of the note, or that the respondent obligated itself under that contract to hold the bonds. If such were the case, doubtless a surrender of the bonds would be a breach of the appellant's contract of suretyship, which would be a complete defense to the action. It is not even alleged that, as between the maker and payee of the note, it was any part of the contract that the bonds were to be delivered as security and held by the respondent until the maturity of the note. The case of Antisdel v. Williamson, 165 N. Y. 372, 59 N. E. 207, upon which the appel-

lant relies, does not support his contention. There the surety guaranteed the payment of a *bond and mortgage,* and he was held to be released by an extension of the term of the mortgage, upon the ground that such extension constituted a material alteration of his contract of suretyship, by which he guaranteed, not merely the bond, but the mortgage as well. It was decided in Vose v. Florida Railroad Co., 50 N. Y. 369, that an indorser of notes for which bonds were delivered as collateral was not released by the surrender of the collateral, but was merely discharged to the extent of the value of the security surrendered; and that decision is cited with approval in Antisdel v. Williamson, supra. The case at bar, in its most favorable aspect to the appellant, falls within the principle of the Vose Case, supra. Considering the respondent's obligation, therefore, merely in the capacity of pledgee of the bonds, neither the acts of negligence alleged nor the damages alleged to have been sustained thereby would constitute a defense, in whole or in part, to the action.

[3, 4] The facts alleged with respect to the failure of the respondent to perform its duty under the mortgage trust agreement might constitute a *counterclaim* if, as is not the case, appellant were the only bondholder; but, as they arise out of a separate and independent contract, they would not constitute a *defense* to the action. The appellant, however, in each of the defenses alleges damages caused by the failure of the respondent to perform its duty to the bondholders under the mortgage trust agreement, and seeks to offset those damages against any recovery to which the respondent would otherwise be entitled.

[5] The appellant does not in form plead these facts as a counterclaim, even for the purpose of being used merely as a set-off, which doubtless would be good pleading. See Rando v. Nat. Park Bank, 137 App. Div. 190–192, 121 N. Y. Supp. 1048. But it appears to be unnecessary to label a pleading as a counterclaim if the essential facts are set forth. McCrea v. Hopper, 35 App. Div. 572, 55 N. Y. Supp. 136, affirmed on opinion of Appellate Division 165 N. Y. 633, 59 N. E. 1125. The appellant does not demand an affirmative recovery against the respondent, but merely pleads these facts, which, if the cause of action arising therefrom were vested in him individually, would doubtless constitute a counterclaim as an offset to any recovery by the respondent herein. The duty, however, which the respondent, as trustee under the mortgage trust agreement, owed to the appellant, was one which it owed to all of the bondholders of the West Virginia corporation, in common. In so far as the appellant seeks to show damages by reason of the respondent's negligence to perform its duty under the mortgage trust agreement in defense of the action, or as an offset or counterclaim herein, it would seem that the acts of omission and commission with which the appellant seeks to charge it were the acts of the receiver in the foreclosure action, who was an officer of the court and accountable to the court for his conduct. The answer contains allegations in the nature of conclusions of law, without setting forth the facts, to the effect that respondent released and permitted a discharge of the receiver "from any and all claims against

him" by respondent as trustee for the bondholders; but, in the view we take of the case, it is not necessary to decide whether or not, if the cause of action for the alleged neglect of duty on the part of the respondent were vested in the appellant alone, these allegations would be sufficient to charge the respondent with responsibility for not having required the receiver to account, and for any damages to the appellant resulting from such omission. The facts alleged can only constitute a defense or offset upon the theory that they constitute a cause of action in favor of the *appellant individually and alone* against the respondent, arising on contract, for since this action is based on contract only such a cause of action would be available to him herein. Code Civ. Proc. § 501, subd. 2.

The terms of the mortgage trust agreement are not fully alleged, but it is fairly to be inferred from the allegations of the answer that the respondent became obligated thereby either to the West Virginia corporation, the mortgagor, or to the bondholders *jointly*, or to both, but not severally to each bondholder. The cause of action, if any, for a neglect of duty on the part of the trustee and for an accounting was in the corporation, or in the bondholders, or both, and could not be enforced by a single bondholder in his own right, but only by an action by all the bondholders, or by a representative action in their behalf, or by an action by the corporation for them, or by both the bondholders and the corporation. The liability of the respondent is limited, and it runs to all of the bondholders, and the amount of its liability to them constitutes a fund in which they are all interested. The case of Merrill v. Farmers' Loan & Trust Co., 24 Hun, 297, upon which the appellant relies, is distinguishable, in that there the action was in tort by a bondholder for damages caused by collusion between the trustee and most, if not all, of the other bondholders, and the question as to whether it could be maintained by a single bondholder does not appear to have been presented for decision. Moreover, if that case is to be deemed to have decided this question, it must be regarded as having been overruled by numerous subsequent decisions holding that such a right may only be enforced in equity in a representative action. Marsh v. Kaye, 168 N. Y. 196, 61 N. E. 177; Warth v. Moore Blind Stitcher & Overseamer Co., 130 N. Y. Supp. 748. See, also, Niles v. N. Y. Cent. & H. R. R. Co., 69 App. Div. 144, 74 N. Y. Supp. 617, affirmed 176 N. Y. 119, 68 N. E. 142.

[6] The only argument made by the appellant, based on the alleged breach of the agreement, by which he claims to have indemnified the respondent to the extent of $1,500 for the costs and disbursements in the foreclosure action on the respondent's agreement that the costs and disbursements would not exceed that sum, is that such agreement antedated his contract of indorsement or guaranty, and therefore became a part thereof, and that thereby the respondent was obligated to conduct the foreclosure action and to preserve the security with due diligence and skill, and that a breach of the obligation in this regard and with respect to the charges for costs and disbursements discharged him from liability. The appellant does not specifically allege when the contract with respect to indemnifying the respondent

against costs and disbursements in the foreclosure action was made with respect to the time he indorsed or guaranteed the note, but perhaps it is to be inferred that such contract had been made before such indorsement or guaranty. It is not alleged that it formed any part of the contract under which the appellant agreed to guarantee or indorse the note, or that the respondent's obligations thereunder became in any manner incorporated in the contract of suretyship. We therefore fail to see how a violation of the contract with respect to the amount to be charged by the respondent for costs and disbursements in the foreclosure action would discharge the appellant as surety.

No point is made by appellant with respect to the $125 alleged to be in respondent's possession as part of the net proceeds of the foreclosure of the trust mortgage, being the proportion to which the owners of said 12 pledged bonds would be entitled had the bonds not been pledged, and now available and applicable to the payment, in part, of appellant's liability; and therefore we express no opinion with respect to appellant's rights, if any, arising on that allegation.

It follows, therefore, that the order and judgment should be affirmed, with costs. All concur.