IRVING TRUST COMPANY, Respondent, *v.* HUTCHINSON HOLDING CORPORATION and Others, Defendants, Impleaded with SAMUEL E. JACOBS, Appellant.

First Department, April 13, 1934.

*Lester E. Denonn* of counsel [*Leonard G. Bisco, William A. Stern, II,* and *David Barnett* with him on the brief; *Newman & Bisco,* attorneys], for the appellant.

*William J. Carr* of counsel [*William T. Pullman* with him on the brief; *Davies, Auerbach & Cornell,* attorneys], for the respondent.

UNTERMYER, J. The action is to foreclose a consolidated first mortgage of $400,000 covering premises situated in the borough of The Bronx, for a deficiency judgment against the maker of the bond, Bronx Hub Building, Inc., and, to a limited extent, against Samuel E. Jacobs, who executed a collateral bond for the due payment of one of the consolidated mortgages. The only controverted question on this appeal concerns the liability of Jacobs on this bond.

On June 27, 1922, Jacobs and one Leon S. Mendel (since deceased) executed their collateral bond to secure the payment to the Columbia Trust Company, to whose rights the plaintiff has succeeded, of a consolidated bond and mortgage of Bronx Hub Building, Inc. (formerly Peoples One Hundred and Forty-ninth Street Market, Inc.), in the principal sum of $210,000, payable on April 26, 1927. This mortgage was thereafter reduced to $185,000 and, as thus reduced, was extended by written agreement from April 26, 1927, to April 26, 1930. On February 23, 1928, an additional bond and mortgage for $215,000 was executed by Bronx Hub Building, Inc., to the plaintiff's predecessor and immediately consolidated with the existing consolidated mortgage for $185,000, so that combined they constituted a first mortgage of $400,000. At the same time payment of the principal of this mortgage was extended to October 1, 1930. Throughout these transactions Jacobs was president of Bronx Hub Building, Inc., and as such conducted the negotiations whereby the mortgage for $185,000 was consolidated and extended. The court at Special Term has held that he is liable upon the collateral bond executed on June 27, 1922. It directed that if, upon the foreclosure sale, the premises did not realize $400,000 a deficiency judgment be entered against Jacobs for the difference between $185,000 and forty-six per cent of the proceeds of the sale. We need not, however, consider whether the Special Term correctly determined the extent of Jacobs' liability for any deficiency resulting on the sale, because we are of opinion that the affidavit of Jacobs asserts facts which preclude the granting of summary judgment.

The relation between Bronx Hub Building, Inc., and Jacobs was that of principal and surety. In the absence of special circumstances, the extension or consolidation of the mortgage, for the payment of which Jacobs was secondarily liable, would operate to discharge him as surety (*Antisdel* v. *Williamson*, 165 N. Y. 372). The plaintiff maintains that there exist special circumstances here arising from the fact that, as president of Bronx Hub Building, Inc., Jacobs himself arranged for the consolidation and extension of the mortgage. This, it is claimed, was evidence of consent by Jacobs to these modifications, precluding him from denying liability on that ground.

The defendant contends that mere knowledge by a surety of modifications, though without objection by him, is not the equivalent of consent (*City of Middletown* v. *Ætna Indemnity Co.*, 97 App. Div. 344; *McDonough* v. *Mancuso*, 234 id. 161), and that the act of Jacobs in negotiating for these changes as president of Bronx Hub Building, Inc., does not prevent him from disputing his individual liability, as surety, on account of the changes so made. We do not need, however, to choose between these two alternatives, because the affidavit of Jacobs contains allegations, of which there is no denial in this record, to the effect that, when the mortgages were consolidated and extended in 1928, he refused the request of the plaintiff's predecessor to execute a new collateral bond, stating that " the loan would have to be made upon the sole security of the real estate." If, notwithstanding this, the mortgagee agreed with the owner to a modification of the terms of the mortgage, then any inference of consent that might otherwise have been justified by the participation of Jacobs in negotiating for these changes on behalf of the Bronx Hub Building, Inc., was repelled by express notice to the mortgagee of a contrary intent.

The plaintiff also relies on a provision in the collateral bond to the effect that " the terms and provisions of the mortgages and the consolidation and extension agreements heretofore described should remain unaffected by the said collateral bond and that said collateral bond should in no wise be impaired by reason of any further obligation, stipulation or agreement between any subsequent owner or owners of the mortgaged premises and the Columbia Trust Company relating to the payment of the said sum, or by reason of any release of a portion of the mortgaged premises from the lien of the said mortgage, and that the said collateral bond should be and remain in full force and effect and in no wise impaired until the actual payment of the sums secured by the aforementioned bonds, mortgages and consolidation and extension agreements." This provision is not applicable because the agreement was not by any " subsequent " owner of the premises. Apart from this, it is apparent that it does not include a modification of the mortgage but merely provides that the existing mortgage is not to be affected by the execution of the collateral bond and, likewise, that liability on the collateral bond shall not be affected by assumption of the mortgage by any subsequent owner of the premises. This is evident from the reference to a " further obligation " by any " subsequent " owner relating " to the payment " of the mortgage debt. These provisions do not suggest that the surety shall remain liable on the collateral bond notwithstanding any alteration in the terms of the mortgage.

The order should be reversed, with twenty dollars costs and disbursements, and the motion denied, with ten dollars costs.

O'Malley and Townley, JJ., concur; Finch, P. J., and Merrell, J., dissent and vote to affirm.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with ten dollars costs.