AGNES E. McDONOUGH, Respondent, v. LEOPOLD MANCUSO and Others, Defendants, Impleaded with MORRIS GOLDBLATT and Another, Appellants.

Third Department, December 30, 1931.

*Dugan & Bookstein* [*Daniel J. Dugan, Isadore Bookstein* and *Avrom M. Jacobs* of counsel], for the appellants.

*Mann & Mann* [*Adelbert F. Jenks* of counsel], for the respondent.

HILL, J. This appeal is from a deficiency judgment in a mortgage foreclosure. The appellants Morris Goldblatt and his wife Rebecca were the grantees in a deed by which they assumed the payment of the mortgage foreclosed. They were mesne grantees between the owner at the time of the execution of the mortgage and the defendant owning the equity of redemption at the time of the foreclosure. Their liability was as sureties. (*Calvo* v. *Davies*, 73 N. Y. 211; *Paine* v. *Jones*, 76 id. 274.) They claim to be exonerated and released because of an agreement between their grantee Mancuso, who had assumed the payment of the mortgage, and the then mortgagee Mary E. Nellis, subordinating the foreclosed mortgage to one for $5,000 executed by Mancuso to a savings bank, the proceeds being used to retire two mortgages aggregating $3,500 which were the only prior liens until the subordination agreement was made and the new $5,000 mortgage executed. The surplus of $1,500 remaining from the proceeds of the new mortgage was kept by Mancuso. Respondent admits the subordination of the mortgage, but says that the appellants agreed to continue their liability. The consent of the mortgagee to an increase in the amount of the lien superior to her mortgage released these sureties unless they agreed to continue their liability under the changed conditions. (*St. John's College* v. *Ætna Indemnity Co.*, 201 N. Y. 335; *Smith* v. *Molleson*, 148 id. 241; *Page* v. *Krekey*, 137 id. 307.) There is no direct proof of such an agreement. Respondent argues that the circumstances surrounding the transaction, the acts of the appellants and their admissions, justify and require a finding that one was made. The negotiations concerning this matter were had with the husband of Mrs. Nellis, the mortgagee. He says, and it is undisputed, that Mancuso, the grantee, paid him $150 as the " fee " to Mrs. Nellis for signing the subordination agreement. It was legal and proper for these parties to make a new agreement. Knowledge alone by these appellants of this agreement is not enough, it must be coupled with an agreement that their liability continued.

The appellants agreed to exchange their equity in the mortgaged premises with L. Mancuso for his equity of a like estimated value in other real estate. The foreclosed mortgage secured the payment of $2,105. It was subsequent to the two mortgages above mentioned as having been retired with a part of the proceeds of the bank mortgage. At the date of the exchange it was not due, but the two prior ones were past due. The contract to exchange the properties was drawn by a son of the grantee Mancuso late in July, 1925. It recited that appellants' premises were " subject to a mortgage upon which there remains unpaid the principal sum of about $5,600 payable at the rate of $15 per month on the principal, plus interest at the rate of 6% per annum on unpaid balances." Goldblatt took the instrument to his attorney and his father for approval. He returned with it to the Mancuso law office by appointment on August seventeenth, when it was executed by both parties. Four days later, August twenty-first, Mancuso applied to the savings bank for a loan of $6,000. The bank approved a loan for $5,000 on August twenty-third, on condition that the proceeds be used to retire the two prior mortgages of $3,500, and that the Nellis mortgage be made subordinate to the bank mortgage. On August twenty-ninth, Gordon, the attorney for Goldblatt, delivered a search upon this property, which had been brought down to date, to the attorney Mancuso. The parties met on August thirty-first, which had been fixed as the law date, at the office of Gordon, and deeds were exchanged. We are asked to find that Morris Goldblatt consented to continue as a surety for the payment of the Nellis mortgage from the evidence of the Mancusos that he was the chief actor in procuring the loan from the bank and the agreement to subordinate the Nellis mortgage. The reason given for his activity was the misstatement in the contract as to the due date of the first and second mortgages. They said that they did not learn until the law day that these mortgages were past due, and that refinancing seemed necessary. In view of the facts and dates which appear from the written and in some cases recorded instruments, as above enumerated, these statements are not impressive. Neither is their assertion that the exchange of deeds on the law day was only tentative and not to become final and fixed until the new mortgage was negotiated, in view of the earlier application by Mancuso for and the approval of the loan by the bank, and the execution and recording of the mortgage three days later. So immediate an execution of the completed mortgage would indicate that its preparation was begun directly Mancuso received title to the property. The concededly erroneous statement contained in the contract of August seventeenth as to the due dates of the two mortgages may

have been the error of the attorney Mancuso, or a misunderstanding of Goldblatt, who had paid fifteen dollars of principal on the third mortgage, and interest on all three mortgages each month to Nellis. Mancuso's application on August twenty-first for a loan from the bank in anticipation of the expected transfer to him indicates that he then knew that the first and second mortgages were past due. His son knew of the error in the contract in any event when he received the search from appellants' attorney two days before the law day.

The quite unusual and involved procedure in this foreclosure action, the several judgments and the amendments thereof lead me to wonder if the entry of this deficiency judgment against the appellants was not an afterthought, designed possibly to relieve the brokers who sold and guaranteed the payment of this mortgage to the plaintiff. Mrs. Nellis, prior to the foreclosure, sold the mortgage in suit to P. F. McGowan, Inc. This corporation assigned it and guaranteed its payment to the plaintiff. The complaint in the foreclosure action asked for a judgment of deficiency against the original mortgagor, one Fitzgerald, and the intermediate owners of the equity. The appellants Goldblatt did not appear or answer. However, the judgment of foreclosure and sale dated October 25, 1927, contained no provision as to the persons liable for a deficiency. On January 13, 1928, a judgment of deficiency was entered against those named in the complaint, except these appellants Morris Goldblatt and his wife Rebecca, and also against McGowan, Inc., the guarantor of the mortgage, although the complaint contained no allegation as to the liability of the last mentioned. On July 7, 1928, the judgment of January thirteenth was modified by striking out the name of the wife of one of the intermediate owners of the equity and including the names of these appellants as judgment debtors. By an order of February 20, 1929, appellants' default was opened and they. were permitted to appear and defend the prayer of the complaint for a deficiency judgment against them. The issue was tried before the court without a jury on March 27, 1929. The decision of the court was announced in an opinion which stated, " Without analyzing this record in detail I am convinced after a thorough review of the evidence, and a consideration of the briefs, that the defendants Goldblatt never consented to the change. It is highly improbable after they had conveyed this property that they would ever consent to be placed in a position increasing their own liability to the extent of $1,500. Nothing in the record before me requires them to do this. Obviously they could reap no advantage by consenting to the change. If they were finally called upon to pay by reason of the default of the defendant Mancuso they

would be assuming a liability not in existence at the time they transferred the property." Thereafter upon application the case was reopened. Upon the rehearing there was little change in the testimony, but the court arrived at a differenct conclusion, stating in explanation, "A judge, of course, is not infallible. I have given this cause a great deal of consideration, I have read and re-read the testimony and I am morally and legally convinced that if I should adhere to my former conclusion great injustice would be done the plaintiff. Plaintiff is therefore entitled to a final judgment to be entered against the defendants, with costs." I conclude that the plaintiff, respondent's interest in this case is largely theoretical, as she has an unquestioned judgment against Mancuso and a subsequent grantee, and also against the guarantor, McGowan, Inc.

The Mancusos' evidence seems improbable when considered in connection with the dates and contents of the written instruments. However, under the view I take, it is of little importance to determine whether the facts are as stated by the respondent's witnesses or by those of the appellants, but if it were necessary to decide this question, the weight is with the appellants. Also, if this case is to be decided upon the facts, I agree with the trial justice in his first decision that it is highly improbable that the appellants would consent to continue their liability after a change by which their grantee received $1,500 in cash and their liability was increased correspondingly. I find no evidence which supports the finding that Morris Goldblatt agreed to continue his liability after the change. Upon the first trial Nellis, agent for the mortgagee, said that he had never seen either of the appellants and that all negotiations were had with Mancuso. Upon the second he modified this slightly, stating that he first saw Mancuso and later that the appellant Morris Goldblatt called at his office. He made no statement as to the purpose of Goldblatt's visit. In reference to the $150 payment by Mancuso he said, " $150 for permitting the postponement to the bank mortgage. That is, the fee for Mrs. Nellis, but I guess I kept it. * * * Q. That was the fee, Mr. Nellis, for the agreement on behalf of Mrs. Nellis to subordinate her mortgage to the mortgage of the bank? A. That is the idea." Thus it seems that the consideration which the mortgagee received for the subordinating agreement was a cash payment from Mancuso, and not a promise by the appellants to continue their liability as sureties for the payment of the mortgage. The testimony of the Mancusos, if given full credence, only indicates an interest and activity by the appellant Morris Goldblatt to further an original agreement between these witnesses and the mortgagee. Had the mortgagee testified to appellants' consent that the obligation would continue after the

modification, the Mancuso testimony would have been corroborative. There is no evidence to be corroborated of such an agreement.

.The original liability of the Goldblatts arose under a sealed instrument, and while "the ancient technical rule of the common law that a contract under seal cannot be varied or discharged by a parol agreement" has been modified, weakened and possibly superseded by the modern rules of procedure (*Harris* v. *Shorall*, 230 N. Y. 343, 348), enough of it should remain to make this attempt ineffective as a matter of law. There is no proof that Rebecca Goldblatt had knowledge of any of these transactions, except the conveyance to Mancuso.

The judgment should be reversed, with costs, on the law and facts, and the complaint dismissed as against these appellants, with costs.

All concur; RHODES, J., in result.

Judgment reversed on the law and facts, with costs, and complaint dismissed as to the appellants, with costs.

The court reverses findings of fact numbered 18, 19, 21, 23 and 27, and new findings are made as follows: That the consideration for the agreement to postpone the mortgage in suit and to make it a subsequent lien to the mortgage for $5,000 given by Mancuso to the Schenectady Savings Bank was the payment of $150 made by Mancuso to Andrew J. Nellis as agent for his wife, the then mortgagee. That such agreement to subordinate the mortgage in suit to the bank mortgage released the appellants Goldblatt from their liability as sureties.