CENTRAL SAVINGS BANK IN THE CITY OF NEW YORK, Respondent, v. RITCHEY REALTY CORPORATION and Others, Defendants, Impleaded with WILLIAM F. LAHIFF, Appellant.

First Department, January 19, 1934.

*Louis Salant* of counsel [*Herman Asher* with him on the brief; *Gettner, Simon & Asher*, attorneys], for the appellant.

*Wendell W. Forbes* of counsel [*Curtis, Mallet-Prevost, Colt & Mosle*, attorneys], for the respondent.

MARTIN, J. This action was brought to foreclose a consolidated bond and mortgage for $210,000 upon the separate properties known as No. 110 and No. 112 West Forty-seventh street, borough of Manhattan, city of New York. This bond and mortgage was a consolidation and merger of six separate bonds and mortgages, three of which were liens against No. 110 West Forty-seventh

street, two on No. 112 West Forty-seventh street, and the sixth a blanket mortgage on the two properties.

The defendant, appellant, William F. LaHiff was not a party, directly or indirectly, to the consolidation agreement, nor was he at any time the owner of the properties. His only connection with the subject-matter of the complaint is that some years before the consolidation agreement he executed a collateral bond guaranteeing the payment of the amount of the first two bonds and mortgages on the property known as No. 110 West Forty-seventh street.

In September, 1924, the LaHiff Realty Corporation owned No. 110 West Forty-seventh street, which was subject to two bonds and mortgages, made by previous owners, originally aggregating $110,000 but reduced by payment to $200,000. To induce the plaintiff to take an assignment of the two bonds and mortgages LaHiff Realty Corporation entered into an agreement with it, whereby LaHiff Realty Corporation agreed to pay the indebtedness of $100,000 in installments of $1,000 on April 1, 1925, and on each October first and April first thereafter, until and including April 1, 1929, and the balance of $91,000 on September 1, 1929, with interest payable at the rate of five and one-half per cent.

As collateral security for the payment of the indebtedness of $100,000, the appellant LaHiff, on September 5, 1924, and simultaneously with the aforesaid agreement between LaHiff Realty Corporation and plaintiff, delivered his bond to plaintiff, whereby he bound himself to pay the sum of $200,000, with interest at the same time as the LaHiff Realty Corporation had agreed to pay. Thereafter installment payments amounting to $9,000 were made on this indebtedness, reducing it to $91,000. The balance was not to become due according to the terms of the agreement of LaHiff Realty Corporation and the appellant LaHiff's collateral bond until September 1, 1929.

Thereafter, on April 18, 1927, the then owner of the property 110 West Forty-seventh street, executed its bond and mortgage upon said premises in the sum of $19,000, and thereafter and on March 7, 1928, the Ritchey Realty Corporation, the then owner of both No. 110 and No. 112 West Forty-seventh street, delivered its blanket mortgage upon both properties for the sum of $46,000. The premises No. 112 West Forty-seventh street was already subject to two bonds and mortgages in the respective sums of $47,000 and $7,000. There were thus six separate bonds and mortgages upon the premises aggregating $210,000.

The appellant LaHiff had given his bond, collateral to the agreement of the LaHiff Realty Corporation to pay the two bonds and mortgages of $75,000 and $16,000 respectively. He was in no way obligated on the other four bonds and mortgages.

It is important to note that on March 7, 1928, upon the execution and delivery of the last and blanket mortgage of $46,000, the Ritchey Realty Corporation and the plaintiff, which was the owner of all six bonds and mortgages, entered into an agreement whereby in order to induce the plaintiff to extend the time of payment of said six mortgages, said mortgages, with the bonds accompanying the same, were consolidated and made equal and co-ordinate liens without priority of the one over the other, so that together they should constitute but one first mortgage to secure the aggregate principal of $210,000, which sum the defendant Ritchey Realty Corporation agreed to pay on April 1, 1933, with interest. As security for the payment of the indebtedness of $210,000, the Ritchey Realty Corporation gave to the plaintiff a blanket mortgage upon both properties in question. This new agreement provided that the whole principal sum of $210,000 should become due after default in the payment of interest for twenty days.

This agreement was made before the extended due date of the two bonds and mortgages, payment of which the LaHiff Realty Corporation had agreed to make, and likewise before the due date of the appellant LaHiff's collateral bond, and at a time when there was no default on either of these two bonds and mortgages or on the LaHiff Realty Corporation's agreement, or on the appellant LaHiff's collateral bond.

The complaint contains no allegation that the appellant had knowledge of, consented to, or was either directly or indirectly a party to the consolidation agreement of March 7, 1928.

There being a default in the payment of interest upon the consolidated bond and mortgage for twenty days, the plaintiff elected to declare the whole principal sum of the consolidated bond and mortgage due and payable and brought this foreclosure action. In its complaint plaintiff demands judgment that the premises be sold and the proceeds thereof be applied to the payment of the amount due to the plaintiff upon the consolidated bond and mortgage, and that the appellant William F. LaHiff, to the extent of his liability under his collateral bond, may be adjudged to pay any deficiency which may remain due upon the consolidated bond and mortgage.

The appellant LaHiff moved for judgment dismissing the complaint as to him upon the ground that by the consolidation agreement he was released from all liability upon the collateral bond; that he was not, therefore, liable for any deficiency, and that the complaint consequently failed to state a cause of action as against him, which motion was denied.

The agreement which the appellant LaHiff guaranteed was a

contract for the payment of two bonds and mortgages in the sum of $100,000 upon No. 110 West Forty-seventh street, and as that contract was materially altered by the consolidation agreement with the Ritchey Realty Corporation, the appellant was discharged from his liability as guarantor of the payment of the two bonds aggregating only $100,000. Although he guaranteed the indebtedness of a primary obligor to that amount which was reduced to $91,000, by the terms of the consolidation agreement, the indebtedness of the primary obligor was increased to $210,000. The unpaid principal of the indebtedness guaranteed by appellant was not due until September 1, 1929. The property known as No. 110 West Forty-seventh street, which is included in the contract which appellant LaHiff guaranteed, stood as a first security for the unpaid sum of $91,000, but by the consolidation agreement the lien thereon was increased to $210,000.

The changes in the contract guaranteed by appellant LaHiff were material and attempted to enlarge his obligation and liability. That being so, he was discharged from all liability.

In *Toner* v. *Ehrgott* (226 App. Div. 244) this court said: " The defendant Wilder, however, is in a somewhat different position. So far as appears from the pleadings under consideration, she neither consented to, joined in, nor in any way approved or ratified the change in terms of the Wilder-McMahon bond and mortgage on which she was liable. She was, therefore, by such change and consolidation relieved from all personal liability."

In *McDonough* v. *Mancuso* (234 App. Div. 161) the court held that the consent of the mortgagee to an increase in the amount of the lien superior to her mortgage released the sureties unless they agreed to continue their liability under the changed condition.

In the case of *Paine* v. *Jones* (76 N. Y. 274) a mortgage contained a clause giving the mortgagor the right to require the mortgagee to release any portion of the premises upon making certain specified payments. Thereafter the mortgagor sold the premises and the grantee assumed and covenanted to pay the mortgage. The grantee and the mortgagee then entered into an agreement, without the consent or knowledge of the original mortgagor, abrogating the clause relating to the release of any portion of the premises upon making certain payments. The court held that the release of the privilege was such an alteration of the contract as relieved the mortgagor from liability. (See, also, *Antisdel* v. *Williamson*, 165 N. Y. 372.)

If the property which was primarily pledged as security for the payment of the debt of appellant LaHiff was sold for that purpose, when the mortgage became due, it might be that there would be

no necessity to look to appellant for any deficiency. There does not appear to be any way to place appellant LaHiff in the position he was in before the consolidation of the bonds and mortgages. His liability was then known and fixed and could not be increased without his consent.

The order should be reversed, with twenty dollars costs and disbursements, and the motion to dismiss as to appellant LaHiff granted.

FINCH, P. J., O'MALLEY and TOWNLEY, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion to dismiss as to appellant William F. LaHiff granted.