that the plaintiff had no cause of action, and for that reason the judgment should be affirmed, with costs. All concur; VAN BRUNT, P. J., and HATCH, J., in result.

---

## MICHIGAN S. S. CO. v. AMERICAN BONDING CO. OF BALTIMORE.

(Supreme Court, First Department, Appellate Division. May 5, 1905.)

**1. CHARTERS—MODIFICATION OF CONTRACT—BONDS—DISCHARGE OF SURETY.**

A charter party for five years from the date of the first loading of the vessel required that it should be converted into an oil tank on or before March 12, 1903, on or before which date the steamer should enter the service of the charterer. Before such date the charterer requested that the work of conversion should not be pressed, and it was agreed that no hire should be charged until the vessel was ready for delivery to the charterer. Before the steamer was ready for delivery the charterer refused to designate a port for loading, and thereafter refused to perform the charter party. *Held*, that the charter period in any event began on March 12, 1903, and that a compliance with the charterer's request for delay in the conversion of the steamer was not such a modification of the contract as relieved the charterer's surety from liability for breach.

**2. SAME—ACTIONS—SEPARATE DEFENSE—DEMURRER.**

In an action on a bond securing the performance of a charter party, a separate defense alleged that after execution of the bond the charter party was altered in important respects by a binding agreement between the charterer and the owner, without the surety's knowledge, that the time fixed by the charter party within which the steamer should be converted into an oil tank and within which she should enter the charterer's service was enlarged, and that in pursuance of such agreement the steamer was not finished and converted as provided in the charter, and was not tendered to the charterer until many months thereafter. *Held* to state a sufficient defense.

**3. SAME.**

A defense to an action for breach of a charter against the charterer's surety, alleging that the owner did not use proper diligence to recharter the steamer, was insufficient when pleaded as a complete defense.

Appeal from Special Term, New York County.

Action by the Michigan Steamship Company against the American Bonding Company of Baltimore. From an interlocutory judgment overruling demurrers to certain separate defenses on the ground that the complaint did not state facts sufficient to constitute a cause of action, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Everett P. Wheeler, for appellant.
Harrington Putnam, for respondent.

INGRAHAM, J. The instrument sued on in this action is a bond by which the Houston Oil Company of Texas (therein called the "charterer"), as principal, and the American Bonding Company of Baltimore, as surety, are held and firmly bound unto the plaintiff "in the sum of the amount of the actual damages sustained by it by reason of any breach or breaches by the Charterer" of the provisions of a charter party, the entire aggregate amount of which

damage shall not in any event exceed the sum of $100,000, "should any breach or breaches be made by Charterer within the first three years of the period of said Charter Party; and if the said Charter Party shall continue in force into the fourth year of the period of the Charter Party, then the entire damages shall be limited to such as may be actually sustained by the Owner by reason of any breach or breaches made by Charter during the fourth year of the period of the Charter Party, the entire damages in no event to exceed the sum of Sixty-six thousand ($66,000) Dollars; and if the said Charter Party shall continue in force into the fifth year of the period of the said Charter Party, that then the entire damages shall be limited to such as may be actually sustained by Owner by reason of any breach or breaches made by Charterer during the fifth year of the period of the said Charter Party, in no event to exceed the sum of Thirty-three Thousand ($33,000) Dollars." This instrument recites the fact that the Houston Oil Company has chartered from the plaintiff the steamship British Queen, to be renamed "Lansing," for a period of five years, as will more fully appear by charter party entered into on the 16th day of October, 1902, and that it was a condition precedent to the execution of said charter party that the said charterer should give a bond guarantying compliance by said charterer with the provisions of section 18 of said charter party, which section by reference was thereby made a part of this instrument. The charter party recited in this agreement was not made a part of the complaint, but by a stipulation between the parties it was agreed that on the argument the charter party referred to might be considered by the court as though expressly embodied in and made a part of the complaint. The eighteenth clause of the charter party referred to in the bond is substantially repeated in the condition of the undertaking that the aggregate amount of the damages to be paid by the charterer shall not in any event exceed the sum of $100,000 for any breach or breaches made within the first three years, $66,000 for a breach in the fourth year, and $33,000 for a breach in the fifth year. The complaint alleges the execution of this charter party; that by it the plaintiff chartered to the Houston Oil Company of Texas the steamship British Queen, to be renamed "Lansing," for the period of five years from the date of the first loading of the said vessel, which shall be the period of this charter. After regulating the use to which this steamer could be put, the charter party provided that the owner should forthwith, upon the execution of the contract, at its cost and expense, convert the said steamship into an oil tank, tight, stanch, and strong, and in every way fitted for the voyages contemplated in the charter party, in which condition it should be maintained by the owner at its cost and expense during the period of the charter party; that the work of the said conversion should be proceeded with immediately, and should be prosecuted and completed with all due dispatch, and finished on or before the 12th day of March, 1903, "on or before which date also said steamer shall enter the service of Charterer." The complaint further alleges that after the execution of this charter party the

plaintiff proceeded to, and did, at its own cost and expense, which expense exceeded the sum of $100,000, convert the said steamship into an oil tank, tight, stanch, and strong, and in every way fitted for the voyages contemplated in said charter party; that while said work was in progress the said oil company requested that the work of such conversion should not be pressed, and informed the plaintiff that it was not ready to take up and begin the direction of a port to which the said steamship Lansing should repair to enter upon the execution of such charter, nor would it be ready to direct such port nor to load the said steamer in the month of March, 1903; and thereupon, in diminution of the liability of the defendant on the said bond, it was understood between the plaintiff and the said oil company that no hire should be charged the oil company by the plaintiff during the period between March 12, 1903, and the time when said steamer should be ready for delivery to the oil company; that "while the said steamship was being converted, in the manner required by said charter party, into an oil tank steamer, plaintiff notified said oil company that it was ready to enter upon the execution of said charter party, and to send the said steamer to such port in the Gulf of Mexico as the charterer should designate, pursuant to the provisions of said charter. But during the month of November, 1903, said oil company notified the plaintiff that it would be unable to use the said steamer during the month of January, 1904, in and about the business called for by said charter party, and altogether failed to designate any port to which it should be sent." The complaint further alleges that thereupon the plaintiff, with the consent of the oil company, chartered the steamer for other purposes, for other voyages, and that about the month of March, 1904, the oil company notified the plaintiff that it was unable to use said steamer at all, and it neglected and refused to designate any port of loading to which it should be sent by the plaintiff; that thereupon the plaintiff, with the consent and approval of the oil company, chartered the said steamer to the Standard Oil Company for the balance of the period specified in said charter, and such charters were executed at the request of the Houston Oil Company for the purpose of reducing the damages which would otherwise have been sustained by the plaintiff by reason of the breach of the said charter party by the said oil company, and that the defendant consented to such recharters. The complaint further alleges that the total loss caused the plaintiff by reason of the breach of the charter party aforesaid by the said oil company during the first three years of the period of the charter party between the plaintiff and the said oil company very much exceeded the sum of $100,000, for which the defendant bound itself to the plaintiff; that the said oil company has neglected and refused to pay to the plaintiff the amount of said damages, or any part thereof. The court below held that the matters alleged in the second and fourth separate defenses were insufficient, but that the demurrer thereto must be overruled owing to the infirmities of the complaint; that the contract between the oil company and the plaintiff extending the date fixed for the completion

of the work of alteration of the steamer and the commencement of the charter hire discharged the surety; that it was the defendant's legal right that the ship should be completed according to the contract, and that, if the plaintiff made default, the defendant should be relieved of its liability; that it was also the defendant's legal right that the ship should be completed and tendered to the oil company on or before March 12, 1903, and the latter put to a performance or default on its part at that time, so that the defendant might then take measures for its own protection by adjusting the damages with the plaintiff and proceeding immediately against the oil company for recoupment.

The question, therefore, is, whether this contract between the plaintiff and the oil company, the defendant's principal, as alleged in the complaint, was such an alteration of the contract as would discharge the surety. The charter party in express terms was to continue for five years "from the date of the first loading of the said vessel which shall be the period of this charter," and the conversion of the steamer should be proceeded with immediately and "shall be finished on or before the 12th of March, 1903, on or before which date also said steamer shall enter the service of Charterer." Reading these two clauses together, I think that it was the intention of the parties that the period over which the contract was to extend was to commence at the date of the first loading of the steamer, or, if she had not been loaded before, on the 12th of March, 1903. So that the period of five years would commence to run, if the vessel had not been loaded prior to that time, on the 12th of March, 1903. There was no obligation of the plaintiff to have the steamer finished before that date; but upon that date, if the conversion of the steamer had been completed, it was to enter the service of the charterer, and the term of the charter would in that event be five years from the 12th of March, 1903; and the defendant became obligated as a surety for the damages actually sustained by the plaintiff by reason of any breach or breaches of this charter party by the charterer.

There can be no doubt of the rule that a surety is discharged by any alteration of the contract to which his guaranty applies, whether material or not, and that the court will not inquire whether it is or is not to his injury. Antisdel v. Williamson, 165 N. Y. 372, 59 N. E. 207. If there was any alteration of the contract between the oil company and the plaintiff, without the consent of the surety, the surety is discharged. Under the contract, the plaintiff was bound to finish the repairs of the steamer and have her ready to enter into the service of the charterer on or before March 12, 1903. Before that period arrived, the oil company requested that the work of conversion of the steamer should not be pressed, and informed the plaintiff that it was not ready to take up and begin the direction of a port to which the said steamer should repair to enter upon the execution of such charter. There is no allegation that, based upon this statement, there was any agreement by which the beginning of the term of the charter party was to be postponed, or, in fact, any assent by the plaintiff to any modification

of the terms of the charter party. The term of the charter of the steamer was still to commence on the 12th of March, 1903. This notice was in effect a breach of the charter party by the oil company, for it notified the plaintiff that it would not perform the charter party in that respect. In view of this notice to the plaintiff by the oil company, I think the plaintiff would have been justified in at once treating it as a breach of the contract by the oil company, and in commencing an action for damages against the oil company and the defendant, its surety. Nor would the failure of the plaintiff to complete the alteration of the ship after such notice have relieved the defendant from its obligation under the bond.

But it is alleged that, based upon this notice that the oil company would not be able to comply with the contract and use the steamer in March, 1903, it was agreed that no hire of the vessel should be charged the oil company by the plaintiff between the 12th of March, 1903, and the time when said steamer should be ready for delivery to the oil company. Is that an alteration in the contract between the plaintiff and the oil company? There was no agreement that the steamer should not be ready in March, 1903. It is not alleged that the steamer was not ready in March, 1903. There was no agreement that the commencement of the term of the charter should be postponed until the steamer was actually in the possession of the charterer. The term still ran from March 12, 1903, for five years, but the plaintiff waived the obligation of the charterer to pay for the vessel for an indefinite period not specified. Suppose that on the 12th day of March the plaintiff had notified the charterer that the steamer was ready, and had demanded that the charterer designate a port at which she was to be loaded; there can be no doubt, I think, but that under this arrangement the charterer would have been bound to designate the port and to load the steamer when she arrived there, and would have been responsible for a failure to comply with its agreement. By the contract, both the bond and the charter party contemplated the continuance of this charter party for five years. The bond was to provide indemnity for a breach or a succession of breaches during the period it was to run. The surety was liable for all damages sustained by the plaintiff because of such breach or breaches, but its liability was not to exceed the sum of $100,000 should a breach or breaches be made by the charterer within the first three years of the period of said charter party, the sum of $66,000 for any breach or breaches in the fourth year, and the sum of $33,000 for any breach or breaches made by the charterer during the fifth year. So that the fact that there was a breach of the contract by the defendant's principal in the first year, or before or at the beginning of the contract, would not discharge the obligation of the defendant for subsequent breaches. According to this allegation of the complaint, there was a breach of the contract on March 12, 1903, when the contract was to commence; for then it was that the charterer notified the plaintiff that it would not fulfill the contract or comply with the obligations to be then performed. The plaintiff then waived that breach, without any agreement to postpone for a day

the completion of the contract on the part of the charterer, and without any agreement by which the original charter party was modified. It simply agreed that it would not require the charterer to pay for the steamer until it was ready for delivery. I do not think that this can be said to be a modification of the original charter party, for a breach of which the defendant had agreed to pay the plaintiff any damages that it should sustain.

The plaintiff then notified the oil company that it was ready to enter upon the execution of such charter party, and to send the steamer to such port in the Gulf of Mexico as the charterer should designate, pursuant to the provisions of the charter. But during the month of November, 1903, the oil company notified the plaintiff that it would be unable to use said steamer during the month of January, 1904, in and about the business called for by said charter party, and altogether failed to designate any port to which it should be sent. Here was another breach of the contract by the charterer. It had notified the plaintiff that it was not ready in March, and again notified it in November that it would not be ready in January, 1904; and the plaintiff then, as it was bound to do, endeavored to reduce the damages by chartering the steamer to others. This certainly was not a change of the contract, or a violation of the obligation of the plaintiff to the defendant. And finally about the month of March, 1904, the oil company notified the plaintiff that it would be unable to use the same steamer, and could not designate any port to which she should be sent for loading; which was also a breach of the contract.

It is for the balance between what the plaintiff would have received had the oil company carried out its agreement and what it actually received for the use of the steamer that the plaintiff seeks to recover of the defendant. I agree that, if there had been any contract between them binding upon the parties to the charter party that modified it in any way, the defendant would have been discharged. But a mere agreement between the parties to a contract that one of them will not enforce a breach of the contract by the other is not a modification of the contract which discharges the surety. The learned counsel for the respondent treats this allegation as a modification of the charter party by extending the plaintiff's time for completing the ship, and the time when the charter should commence, to November, 1903. But I do not so read the complaint. The only agreement by the plaintiff was that it would not insist upon the charterer's paying for the steamer until it should be tendered to the oil company. Whether or not there was a consideration for that agreement, so that it would bind the plaintiff, is not material. When the plaintiff sued for a subsequent breach of the contract, there had been no more modification of the original charter party as to the terms or the obligations of either party under it. I think, therefore, that the contention of the respondent, that there was a modification of the charter party alleged in the complaint which discharged the surety, cannot be sustained.

The question then is, whether or not these three separate defenses demurred to are sufficient. It is clear that the second is not. It is pleaded as a complete defense, and certainly it is no defense to the action upon this bond to show that, after the oil company had been guilty of a total breach of the charter party, the plaintiff then rechartered the steamer, so as to reduce as much as possible the damages which the defendant would be called upon to pay. The third separate defense, however, I think is good; for there it is alleged that after the execution of the bond, by a binding agreement between the oil company and the plaintiff, without the knowledge or consent of the defendant, the original charter party was altered in important respects; that the time fixed by the charter party within which the said steamer should be converted into an oil tank, and within which she should enter the service of the charterer, was changed and enlarged, and that, in pursuance of said agreement, the said steamer was not finished and converted into an oil tank on or before the 12th of March, 1903, and was not tendered to the charterer until many months thereafter. If there was any alteration of the charter party, for the performance of which agreement the defendant had become surety, undoubtedly, within the rule settled in this state, the surety was discharged. I think the fourth separate defense is bad, as it is there alleged that the plaintiff did not use proper diligence to recharter the steamer, and thereby released the defendant, as surety, from liability. It might be a partial defense if properly pleaded, but as a total defense it is insufficient.

I think, therefore, that the interlocutory judgment appealed from must be reversed, and the demurrer to the second and fourth separate defenses sustained, and the demurrer to the third separate defense overruled, without costs to either party in this court; with leave to the defendant to serve an answer amending the second and fourth separate defenses, without costs, and with leave to the plaintiff to withdraw the demurrer as to the third separate defense, without costs. All concur.

---

### In re TENNEY.

### In re FOSTER'S WILL.

#### (Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. TRUST—POWER OF APPOINTMENT—WILLS—CONSTRUCTION.

