Bernard J. Katz, Appellant, *v.* Tillie Leblang (Also Known as Tillie Leblang Jasie), as Executrix, etc., of Joseph Leblang, Deceased, Respondent.

First Department, March 8, 1935.

*Samuel W. Eskowitz*, for the appellant.

*Daniel Levy* of counsel [*Jasie, Solomon & Levy*, attorneys], for the respondent.

Merrell, J. Plaintiff's assignor, Fulton Improvement Company, as landlord, entered into a lease with Acme Theatre Company, as tenant. The respondent's testator, Joseph Leblang, together with one Gus Schlesinger and one Morris Schlesinger, executed their respective guaranties for the performance of the lease between Fulton Improvement Company, as landlord, and Acme Theatre Company, as tenant. The tenant defaulted in payment of rent and taxes, and the present action is brought by plaintiff, as assignee of the landlord, against the estate of Joseph Leblang, one of the guarantors, to recover for defaults of the said tenant. In the complaint plaintiff claimed the following defaults in the payment of rent and taxes had been made:

1. Non-payment of rent amounting to $13,666.66 for the period from September 1, 1931, to August 31, 1932.

2. Non-payment of rent in the sum of $23,000 for the period from September 1, 1932, to August 1, 1933.

3. Non-payment of the second half of taxes for the year 1932 amounting to $5,719.

4. Non-payment of taxes for the first half of the year 1933 amounting to $5,518.40 and interest of $40.

Plaintiff has abandoned his claims in respect to the first and third of the above items, and now stands upon items 2 and 4 above. By written stipulation entered into by the attorneys for the parties, it was stipulated and agreed that the agreement modifying the original lease was entered into by the landlord and tenant without the knowledge or acquiescence of the guarantor (the defendant's testator) or his legal representative. It is upon this modification agreement that the defendant relies for the discharge of her testator and his estate from liability under the guaranty which the testator had executed.

Under the terms of the original lease the entire rental due annually from the tenant to the landlord was $28,000, in addition to the payment of taxes. By the agreement entered into on May 6, 1932, the Fulton Improvement Company modified the lease with the Acme Theatre Company so as to provide that the rent, commencing September 1, 1931, and terminating August 31, 1933, should be, annually, the sum of $23,000. The original lease provided that the taxes for the second half of 1931 should be paid when they became due and payable. Under the modified agreement taxes were to be paid immediately. For the first half of 1932, under the original lease, the taxes were to be paid when they became due and payable. Under the modification agreement the taxes for that period were to be paid not later than December 1, 1932. The original lease provided that the taxes for the second half of 1932 were to be paid when they became due and payable, and by the modified agreement said taxes were to be paid not later than March 1, 1933. The defendant, respondent, held, and was sustained by the court, that any binding modification between creditor and principal, without the knowledge or consent of the guarantor, discharged the latter, regardless of the effect of such modification. The law in this State seems to support the defendant's contention. The Court of Appeals, in 1879, in *Paine* v. *Jones* (76 N. Y. 274) wrote (at p. 278) : " The respondent's counsel, however, contends with much earnestness that the alteration made by the creditor and principal debtor is not material, and therefore does not injuriously affect the surety. That it changes the contract is very plain, and it does not seem necessary to inquire what mischief the alteration might produce or how it might be prejudicial to the surety. The

law requires that if there is any agreement between the principals with reference to a contract to the performance of which another is bound as surety, he ought to be consulted in regard to any proposed alteration, and if he is not or does not consent to the alteration he will be no longer bound, and the court will not inquire whether it is or not to his injury. (*Grant* v. *Smith*, 46 N. Y. 93; *Bangs* v. *Strong*, 7 Hill, 250; *Calvo* v. *Davies*, 8 Hun, 222; affd. in Ct. of App., 73 N. Y. p. 211.) "

The Court of Appeals, later, in *Page* v. *Krekey* (137 N. Y. 307), held that the defendant's obligation as guarantor was *strictissimi juris*, and that any alteration in the contract discharged the guarantor. In this respect the Court of Appeals wrote: " But the answer to that is that the defendant's obligation is *strictissimi juris*, and he is discharged by any alteration of the contract, to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury." (Cases cited.)

To the same effect was the decision of the Court of Appeals in the more recent case of *Antisdel* v. *Williamson* (165 N. Y. 372), where the Court of Appeals stated (at p. 375): " It is settled law that the obligation of a surety ' is *strictissimi juris*, and he is discharged by any alteration of the contract, to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury.' "

The rule in England and in Massachusetts seems to be quite the contrary, in which jurisdictions it has been held that if the alteration or modification of the contract was for the benefit of the person whose performance is guaranteed, or is not against the interests of the guarantor, the modification would not destroy the guaranty. In this State, the rule, under *Paine* v. *Jones*, *Page* v. *Krekey*, and *Antisdel* v. *Williamson* (*supra*), seems to be as above provided.

Not only was the rent for the year commencing September 1, 1932, reduced from $28,000 to $23,000, but the manner of payment of the rent in installments was modified by the subsequent agreement of the parties. The appellant contends that the effect of the modification agreement was to reduce the rent from $28,000 to $23,000, payable in eight equal successive monthly installments, commencing October 1, 1932. In this respect the appellant urges that " In effect, the only resulting difference between the terms of the instruments is a complete waiver of the entire installment due on September 1, 1932, and a waiver of $236 on each of the succeeding eight installments." Undoubtedly the appellant's argument is to overcome the difficulty arising from the fact that under the original lease rent was payable in nine equal monthly installments. The modification agreement required the rent to be paid

in eight installments. The appellant attempts to overcome the difficulty by claiming that the first installment fell due on September 1, 1932, and was entirely waived. The appellant's analysis is based upon the assumption that the modification agreement required the reduced rental to be paid in eight equal monthly installments commencing October 1, 1932, and *monthly thereafter*. However, the modification agreement contains no such provision. All that the modification agreement states is that the rent for the period beginning September 1, 1932, and terminating August 31, 1933, was to be paid in eight equal installments, beginning on October 1, 1932. There is no provision requiring rent to be paid in *successive monthly* installments. Under the terms of the modified agreement the tenant could pay the first installment on October 1, 1932, and the remaining seven installments whenever it chose during the balance of the year. This certainly was a material modification of the terms of the original contract, which required that the rental was to be paid in eight equal successive monthly installments, commencing on October 1, 1932.

Notwithstanding the fact that the reduction of the rental may be for the benefit of the tenant, and that the obligation of the guarantor may be lessened thereby, such reduction is a material modification of the lease, and operates to discharge the surety. Under our law, any modification, whether material or not, discharges the surety. In the case at bar there was a material variation in the terms of the original lease by the modification agreement.

The order and judgment were right, and should be affirmed, with costs to defendant, respondent, against plaintiff, appellant.

MARTIN, P. J., O'MALLEY and GLENNON, JJ., concur; UNTERMYER, J., dissents and votes for reversal.

UNTERMYER, J. (dissenting). The action is brought by the plaintiff, as assignee of Fulton Improvement Company, the landlord under a lease of a theatre to Acme Theatre Company, against the defendant, as executrix of the estate of Joseph Leblang, who had guaranteed performance of the lease to the landlord to the extent of $12,500.

Upon cross-motions for summary judgment the facts were conceded. The lease, executed on March 27, 1929, was for a term of ten years commencing September 1, 1930, and terminating August 31, 1940. By its terms the tenant undertook to pay rent of $28,000 per annum and in addition to pay real estate taxes, assessments, water rents, insurance and maintenance charges. Simultaneously with the execution of the lease Joseph Leblang, since deceased, executed the guaranty upon which this action is brought, whereby

he guaranteed, to the extent of $12,500, performance by the tenant of all the terms of the lease and assumed responsibility " up to the said sum of $12,500 for any damages arising from the non-performance of any or all of the covenants, conditions and terms therein contained without notice of any such default upon the part of the lessee."

The defaults of the lessee, for which this action was brought, include a balance of $13,666.66 for rent for the period from September 1, 1931, to August 31, 1932, non-payment of rent amounting to $23,000 for the period from September 1, 1932, to August 31, 1933, non-payment of taxes for the second half of the year 1932, amounting to $5,719, and non-payment of taxes for the first half of the year 1933, amounting to $5,558.40.

On May 6, 1932, after the death of the guarantor, the landlord and the tenant, at the latter's request and without the knowledge or consent of the defendant, entered into a modification of the lease, which by its provisions applied only to the rent for the period beginning September 1, 1931, and terminating August 31, 1933, real estate taxes due for the second half of the year 1931, the first half of the year 1932, and the second half of the year 1932. Except as thus modified, it was expressly provided that all the terms of the lease should remain in full force and effect. Although before the commencement of this action the defendant had paid $4,000 to the plaintiff on account of her liability on the guaranty, she now contends that by reason of the modification of the lease made between the landlord and its tenant she has been discharged as guarantor. (*Paine* v. *Jones*, 76 N. Y. 274; *Page* v. *Krekey*, 137 id. 307; *Antisdel* v. *Williamson*, 165 id. 372.)

There can be no doubt, and indeed it is conceded, that by the agreement of modification the defendant was discharged from liability as to the installments of rent due from September 1, 1931, to August 31, 1932, payment of which was extended over a period ending May 1, 1935. For the same reason the defendant was discharged from liability as to the taxes for the second half of the year 1932, payment of which was also extended by the modification agreement. This, however, would not affect the defendant's liability for other installments of rent or taxes which remain unpaid in relation to which no extension of time was given and as to which no other modification sufficient to discharge the guarantor was made. " Where the contract is divisible and gives rise to a succession of debts giving time to the principal as to one will not discharge the surety's liability upon the others." (2 Williston Cont. § 1222.) The rule thus stated is established by several leading decisions in this State. (*Coe* v. *Cassidy*, 72

N. Y. 133; *Ducker* v. *Rapp*, 67 id. 464; *Lowman* v. *Yates*, 37 id. 601.) In any event, therefore, the defendant is liable for the taxes for the first half of the year 1933, amounting to $5,558.40 (less $4,000 paid on account), which were not affected by the modification agreement.

It remains to be considered whether the defendant is not also liable for the unpaid rent from September 1, 1932, to August 31, 1933. Under the lease the annual rental of $28,000 for the year September 1, 1932, to August 31, 1933, was payable in nine equal monthly installments commencing September 1, 1932, to and including May 1, 1933. By the agreement of modification the rent for this period was reduced to $23,000, payable " in eight equal installments beginning on the 1st day of October, 1932." Thereby the landlord waived the entire installment of rent due September 1, 1932, and the sum of $236 on each of the succeeding eight installments. There was thus no extension of time for the payment of rent during this period but only a reduction in the rent payable on the first day of each month from October, 1932, to May, 1933, from $3,111 per month, as provided in the lease, to $2,875 per month, as provided in the modification agreement. I construe the provisions of the modification agreement to require these payments of rent to be made in equal *monthly* installments beginning October 1, 1932, notwithstanding the defendant's claim that they might be made at any time after October 1, 1932, provided the payments were equal in amount. Aside from the unreasonable construction for which the defendant contends as applied to a lease of real estate, my conclusion necessarily follows from a comparison of the modification agreement with paragraph 2 of the lease, which provides for like installments of rent to be paid on the first day of September and " on the first day of each succeeding month." Since the modification agreement expressly provides that, except as modified, all the terms of the lease shall remain in effect, it is evident that the " eight equal installments beginning on the first day of October, 1932," must have been intended to be equal monthly installments of rent. In any event if there were ambiguity in this respect it would not justify a summary judgment dismissing the complaint. (*Brawer* v. *Mendelson Bros. Factors, Inc.*, 262 N. Y. 53.)

It is, however, principally on account of the reduction in the rent, from $28,000 to $23,000, that the defendant contends that the entire obligation of the guarantor for the rent payable during this period has been discharged. This contention, if sustained, means that a creditor who at the request of his debtor agrees to a reduction of the debt, thereby discharges a surety or guarantor.

I find no controlling decision which constrains us to adopt a rule which produces .such an inequitable result. Although there are general expressions to be found to the effect that an alteration of any kind if made without his consent will release the guarantor, the principle of *strictissimi juris* has never before been applied with such rigor as to discharge the guarantor on account of a modification which under no possible circumstances can operate otherwise than to his benefit. Where the creditor agrees, without the guarantor's consent, to a modification of the contract with the principal which may result in benefit or which may result in detriment to the guarantor, the court will not undertake to inquire into the facts to determine its actual effect. (*Paine* v. *Jones, supra,* p. 278; *Page* v. *Krekey, supra,* p. 314; *Antisdel* v. *Williamson, supra,* p. 375; *Holme* v. *Brunskill,* L. R. 3 Q. B. 495, 505; *Croydon Commercial Gas Co.* v. *Dickinson,* L. R. [1876–77] 2 C. P. Div. 46, 51.) The mere possibility of detriment is sufficient to discharge him. (*Paine* v. *Jones, supra,* p. 278; *Cambridge Savings Bank* v. *Hyde,* 131 Mass. 77; *Egbert* v. *National Crown Bank,* 1918 A. C. 903, 908.) This is conceded even by those who have been most emphatic in their criticism of the rule. (Cardozo, The Nature of the Judicial Process, p. 152 *et seq.;* 2 Williston Cont. § 1222; Stearns Law of Suretyship [4th ed.], § 79.) But where the change consists of a reduction in the liability of the principal and, therefore, in a reduction in the liability of the surety, the surety, as matter of law, cannot be prejudiced and for that reason ought not to be discharged. No right of subrogation is impaired or in the least disturbed. If the defendant had paid this reduced rent, she would be at liberty immediately to maintain an action for an equivalent amount against her principal, the tenant.

Any other result seems to me not only unjust in operation but illogical as well. It is unjust because it releases the surety on account of an unqualified benefit bestowed on him by the obligee in " acceding to a request to lighten the burdens of the lease." (*Brill* v. *Friedhoff,* 184 App. Div. 673; affd., 229 N. Y. 547.) It is illogical because such a modification consists merely of a waiver by the obligee of part performance by the principal while he still holds the principal and the surety for the due performance of so much of the obligation as remains. It is, therefore, in the nature of an indulgence of the debtor which, upon familiar principles, does not release the guarantor. (*Clark* v. *Sickler,* 64 N. Y. 231; *McKecknie* v. *Ward,* 58 id. 541; *Michigan Steamship Co.* v. *American Bonding Co.,* 104 App. Div. 347, 355.) If instead of the modification agreement, the plaintiff had agreed by separate instrument to repay to its tenant a proportionate part of the rent as it was

received, it would hardly be contended that the surety was released. (See Pingrey Suretyship & Guaranty [2d ed.], § .101.) Yet such was precisely the effect of the modification here, except that it was more beneficial to the defendant because it also released her from liability for the excess rent.

Indeed, even the defendant does not pretend that the guarantor is prejudiced by the mere reduction in rent. Her claim is that if the landlord had held the tenant to strict performance in the payment of rent, the tenant's default might have been accelerated and that, as guarantor, she might have been in a more favorable position to protect herself by subrogation or otherwise. Such a contention ignores the settled rule of law that the obligee is under no duty to the guarantor to enforce the obligation against the principal. (*McKecknie* v. *Ward, supra.*) Especially is this true here, where the agreement of guaranty provides that the guarantor shall be liable for damages resulting from the non-performance of the lease " without notice of any such default upon the part of the lessee." Consequently, whether or not the rent had been reduced, the landlord could have allowed it to accumulate. The only difference would have been that, if there had been no reduction, more rent would have accumulated because more would have accrued.

The courts of this State have not been inflexible in applying the principle of *strictissimi juris* to situations where the nature of the alteration in the contract has rendered it inapplicable. Although I do not find that the precise question has ever been decided by this court or by the Court of Appeals (See, however, *Ullmann Realty Co.* v. *Hollander*, 66 Misc. 348), a similar question was under consideration in *Kingsbury* v. *Westfall* (61 N. Y. 356), where the defendant had guaranteed the payment by the tenant of the rent of certain premises upon which buildings were erected when the lease was made. The buildings were destroyed by accidental fire during the term of the lease. The action was against the guarantor for rent which had accrued previous to the fire. At the trial the court excluded proof offered by the defendant, that after the fire the plaintiff, without the defendant's knowledge, had accepted a surrender of the lease in consideration of a release to the tenant of the payment of rent thereafter to accrue. It was contended that this had so changed the agreement the performance of which had been guaranteed by the defendant as to discharge him from liability on the guaranty, because upon payment of the rent theretofore due the defendant could no longer be subrogated to the right of the tenant in the leasehold. Although the court recognized that a guarantor, like a surety, was bound

by " the strict letter or precise terms " of the contract of his principal whose performance he has guaranteed, yet it was held that the defendant's right to be put in possession of the vacant lot for the unexpired term upon payment of the accrued rent, could not " by any possibility have resulted to his advantage " and that consequently he was not discharged. Said the court (p. 361): " The case, then, stands in principle as if the plaintiff had, mainly as a charity to the lessees, released them from the hard fate of an accidental fire, changed the contract by releasing them from their obligation any longer to pay rent upon a property that had by accident become nearly worthless to them. This, though it should come within the letter of the rule, would, should it be applied as the defendant insists it should be, do injustice to its spirit. The obligation to pay the rent for which judgment has been recovered has not, in letter or spirit, been changed; nor is it pretended that any right of the defendant growing out of the contract is, so far as it relates to that obligation, in any respect altered or impaired."

This view is sustained by the weight of authority elsewhere. Such appears to be the rule in England. It was stated by COTTON, L. J., in *Holme* v. *Brunskill* (L. R. 3 Q. B. 495, 505), as follows: " The true rule in my opinion is, that if there is any agreement between the principals with reference to the contract guaranteed, the surety ought to be consulted, and that if he has not consented to the alteration, although in cases where it is without inquiry evident that the alteration is unsubstantial, or that it cannot be otherwise than beneficial to the surety, the surety may not be discharged; yet, that if it is not self-evident that the alteration is unsubstantial, or one which cannot be prejudicial to the surety, the court, will not, in an action against the surety, go into an inquiry as to the effect of the alteration, or allow the question, whether the surety is discharged or not, to be determined by the finding of a jury as to the materiality of the alteration or on the question whether it is to the prejudice of the surety, but will hold that in such a case the surety himself must be the sole judge whether or not he will consent to remain liable notwithstanding the alteration, and that if he has not so consented he will be discharged."

In *Cambridge Savings Bank* v. *Hyde* (131 Mass. 77) the sureties upon a promissory note were held not to be released on account of an agreement between the holder of the note and the principal reducing the rate of interest from seven and one-half to six and one-half per cent. The court said (p. 80): " The agreement was merely a stipulation to remit a part of the sum which the plaintiff might claim under the note. It did not tie the hands of the creditor,

or alter unfavorably the condition of the surety. If there was any consideration for it, so that it had any validity, it could not operate to the injury of the sureties, any more than an indorsement of, or a receipt for, a part of the principal would. The change made in the terms of the note was necessarily beneficial to all parties bound by it." Similarly, in *Preston* v. *Huntington* (67 Mich. 139), it was held that sureties on a lease were not discharged by a reduction in the rent, even though made without their knowledge. " The lessors simply waived their right to $75 a month, as provided in the lease, and agreed to take $50 per month instead." The sureties, said the court, could not complain of this. Finally, Williston on Contracts, section 1240, formulates the rule as follows: " But an agreement merely to remit part of the performance due from the principal without changing its character, as by lessening the amount of rent to be paid under a guaranteed lease, or by providing for a lower rate of interest on a debt than the contract provides for, or by waiving a portion of the performance of a contract, will not discharge the surety."

It follows that the order and judgment should be reversed, plaintiff's motion granted and defendant's motion denied, and judgment granted in favor of the plaintiff as demanded in the complaint.

Judgment and order affirmed, with costs.